WM. M. ELLS and CLEMENCE ELLS, his wife, Respondents, *vs.* PACIFIC RAILROAD, Appellant.

1. *Railroad, Osage Valley—Condemnation—Refusal of owner to relinquish land.*—In proceedings to condemn land for the "Osage Valley & Southern Kansas Railroad Company" under the act of 1857, (Sess. acts 1857, pp. 59, 63,) no title to the land will pass unless it appear affirmatively from the record that the owner refused to relinquish his right of way to the company.

2. *Ejectment—Equitable defence—Part performance—Averments, etc.*—In ejectment, when the defence sets up a parol contract for the sale of the land to a third party, followed by a change of possession and the making of improvements on the premises, but fails to state that the possession was taken and that the improvements were made in good faith and solely under the belief that the parol contract would be specifically performed, the equity is not sufficiently stated to make the defense good.

3. *Equity—Relief—Evidence.*—Evidence in order to warrant a court of equity in affording relief, must be clear and forcible, and positive and definite.

## Appeal from Cooper Circuit Court.

*Hayden & Tompkins,* for Respondents.

The judgment of condemnation in this case is void, and may be attacked collaterally. See the following authorities: (Boswell's Lesses vs. Otis, 9 Howard, 336; same case, 18 Curtis, S. C., 168 ; Harris vs. Hardeman *et al.*, 14 Howard, 334 and authorities cited ; same case, 20 Curtis, U. S., 206 ; Fithian vs. Monks, 43 Mo. Rep., 520, 521, 522 and the numerous authorities cited ; 44 Mo., 540 ; City of Boonville vs. Omrod's adm., 26 Mo., 193 ; Cooley on Const. Lim., p. 17, notes and authorities cited ; Dillon on Municipal Corporations, §§ 468, 469 ,470 and notes, and § 471; Janney vs. Spedden, 38 Mo., 395 ; 49 Mo., 361 ; id. 155.)

SHERWOOD, Judge, delivered the opinion of the Court.

This is an action of ejectment brought in the Cooper Circuit Court, by Ells and wife against the Pacific Railroad, to recover possession of the south part of Lot 167 in the city of Boonville.

Both parties claim under James H. Lucas as the common source of title.

The answer of defendant, after a plea of the general issue,

sets up an alleged equitable defense, to the effect that the whole of lot 167 had been purchased of James H. Lucas and Anne L. Hunt, for $500 by the Osage Valley & Southern Kansas Railroad Company, during the pending of proceedings on the part of said Company, as early as September, 1868, to have said lot condemned for a depot, and that under such purchase and with the knowledge of Ells the plaintiff, who is charged in the answer to have been the agent of Lucas and Hunt in making the contract, the O. V. & S. K.R. R. Co., took possession of said lot and erected valuable and lasting improvements, etc.; that defendant is the lessee of said O. V. & S. K. Co.; that Lucas was notified in writing of these proceedings to condemn, that the purchase money had been offered to Ells, the agent, but neither Lucas nor Ells had made or caused to be made, a deed for said lot.

There was a reply to this answer which denied its chief allegations, but failed to deny however, that Lucas was notified in writing, of the proceedings to condemn, or that the purchase money was offered to be paid.

Upon the trial of the cause by the court, the defendant, in order to support the plea of the general issue, read in evidence the judgment of condemnation of the whole of lot 167, in favor of the O. V. & S. K. Railroad Co. and against James H. Lucas. That judgment (which is without date, but purports to have been rendered by the Cooper Circuit Court,) is in these words :

" Osage Valley and Southern Kansas Railroad Company,
against
James H. Lucas.

Now at this day this case coming on to be heard, the same is submitted to the court on the petition of plaintiffs, and proofs, and the court being satisfied that notice of this proceeding was duly served on said defendant, and that the commissioners appointed for that purpose have discharged their duty according to law, in viewing the lot through which the railroad of plaintiff passes, and that said commissioners have filed their report and plat, in the office of the clerk of this

Court, and no valid objection appearing to said report, the same is now here approved, and judgment is hereby rendered against said company, and in favor of said defendant, James H. Lucas, for the amount of damage, and the value of said lot assessed therein in said report, viz.; five hundred dollars, and all costs of the proceeding, and an order and decree is now here made and rendered by this Court, vesting in said company and their successors and assigns forever, the fee simple title of the lot in said plat and report described as follows: viz., lot 167 fronting 90 feet on Morgan St. and 150 feet along Second St., and is situated north of Morgan Street in the city of Boonville, County of Cooper, and through and over which said Railroad passes; and which said title shall vest as aforesaid upon the payment of the said five hundred dollars to the said James H. Lucas."

The act incorporating the Osage Valley & Southern Kansas Railroad Company is found in the Session Acts of 1857, pp. 59 to 63 inclusive. Sections 9 and 10 of that act, point out the mode to be pursued for the condemnation of land. Section 9 provides, "If any owner of any tract of land, through which said railroad shall pass, shall refuse to relinquish the right of way for said road to said company, or the necessary lands for depots, engine or warehouses, water stations, stopping stations or turn outs, * * * the facts of the case shall be specifically stated to the Judge of the Circuit Court of the County in which such lands are situated, and said Judge shall appoint three disinterested citizens of the county in which such lands are situated to view said lands, who shall take into consideration the value of the land and advantages and dis-advantages of the road to the same, and shall report under oath, what damages will be done the said lands or any improvements thereon, stating the amount of damages assessed, and shall return a plat of the land thus condemned; notice of such application to such judge shall be given to the owner of such lands, five days before such application shall be made, if such owner reside in this State," etc., etc., etc.

Section 10 provides: "The persons appointed to view

and value such lands shall file their report and plat in the office of the Clerk of the Circuit Court of the county in which the land or a part thereof is situated, and if no valid objection be made to said report, the court shall render verdict in favor of said owner and against such company for the amount of damages assessed, and shall make an order vesting in said company the fee simple title of the land in such plat and report described.   Objections to such report must be filed within ten days after the same shall be filed," etc., etc.

It requires but a very cursory examination of this judgment, in connection with the provisions of the act above referred to, to see that several of the vitally essential requirements of the latter were utterly ignored if not willfully disregarded, in the proceeding to condemn the lot in question.   In this statutory and summary proceedings ; this legal *coup de main;* in derogation of common law and common right, the utmost strictness is required in order to give validity ; and unless upon the *face of the proceeding* had, it *affirmatively appear* that every essential pre-requisite of the statute conferring the authority has been fully complied with, every step from inception to termination will be *coram non judice.*

Under the statute above mentioned, the refusal of the owner to relinquish is a jurisdictional fact ; in the absence of which, even a court of general jurisdiction would be powerless by judgment of condemnation, to wrest property from its owner.

And authorities are not wanting either in point of numbers or respectability, which hold that *quoad* these summary proceedings, courts of general jurisdiction stand upon the same footing as those tribunals whose jurisdiction is special and limited. It follows as an inevitable sequence from these premises, that the judgment of condemnation was utterly worthless and could be of no avail as a matter of defense.   See Lind vs. Clemens, 44 Mo., 540; Leslie vs. The City of St. Louis, Id., 479 ; Reitenbaugh vs. Chester Val. R. R. Co., 21 Penn. St., 100.

In this view of the subject it becomes entirely unnecessary

to examine into the correctness of the action of the court below, either in giving or refusing declarations of law, or in the admission of testimony.

As to the assessment of damages for the detention of the premises sued for, we see nothing in the record to warrant the belief that the court committed any error.

It only remains to consider the alleged equitable defense set up in defendant's answer : and of this it may be observed, that nothing therein contained would authorize a decree for specific performance ; the rule being, that where an equity based upon part performance is set up as a defense, it must be done with that degree of fullness and precision required in a bill framed with a view to a decree for a specific performance. This the answer signally failed to do. It fails to state that possession was taken of the lot in question, and improvements made thereon, in *good faith*, and *solely* under the belief and expectation that the parol contract would be specifically performed ; but on the contrary, the idea of reliance, in part at least, upon the proceedings to condemn, pervades the whole answer, else what need to state that proceedings for that purpose were instituted, or that Lucas was notified in writing, etc.?

But even had the answer been in all respects formally sufficient, still the evidence would not have been of a character so *clear* and *forcible*, and in its nature so *positive* and *definite* as to warrant a court of equity in affording relief. (1 Sto. Eq., §§ 762, 763, 764, 770.)

The judgment of the court below is therefore affirmed.