———o———

The Kansas City, St. Joseph & Council Bluffs R. R. Co., Appellant, vs. Campbell, Nelson & Co., *et al.*, Respondents.

1. *Practice, civil—Jurisdiction—Railroads—Appropriation of property—Record, what it must show.*—When superior courts are engaged in the exercise of special and limited statutory powers, their records are subject to the same rules as those of courts of special and limited jurisdiction, and in proceedings to appropriate private property for the use of a railroad, the record must show that the parties to the suit could not agree upon the compensation to be paid. (Wagn. Stat., 326, ¿ 1.)

2. *Summary proceedings—Property, divestiture of—Record, what must show.*—Wherever it is attempted by summary proceedings to divest the owner of his property, the record must affirmatively show, that the conditions precedent to the exercise of such extraordinary powers have been fully complied with.

3. *Practice, civil—Jurisdiction—Question, when to be raised.*—The question as to the jurisdiction of the court may be raised at any time and by any party.

4. *Process—Summons, service of—Acknowledgment of—Adults—Infants—Statute, construction of.*—A summons must be served on a minor precisely as on an adult. (Wagn. Stat., 1007, ¿ 7.) An acknowledgment in writing on the writ of the service of summons (Wagn. Stat., 1008, ¿ 9) can only be made by adults or those capable of acting for themselves. A minor cannot do it, nor

can his guardian for him. The statute relative to the appropriation of lands (Wagn. Stat., 326-7, § 1), requiring guardians to be made parties defendant, does not alter the rule as to the service of process.

5. *Railroads—Lands, condemnation of—Commissioners, report of, when set aside.* —Ordinarily, where opinions as to the value of the land might well be variant, the reports of commissioners, appointed to assess the land condemned for a railroad, will not be closely scrutinized; but the court will interfere where the damages assessed are flagrantly excessive; where there are manifest indications of an entire lack of appreciation of the duties and responsibilities of their position, and an utter obliviousness of the rudimentary principles of fairness and impartiality.

## *Appeal from Clay Circuit Court.*

### *B. F. Stringfellow,* for Appellant.

I. Nowhere on the record does it appear that the parties could not agree on the compensation to be made for the land taken. (Cunningham vs. Pac. R. R., 61 Mo., 33.) This being a question of jurisdiction, it can be raised even here for the first time.

II. An infant cannot waive service of process by himself or guardian.

III. The apportionment is so excessive as to call for the censure of this court.

### *J. W. Jenkins, with J. E. Merryman,* for Respondents.

I. The facts are found by the commissioners, and like the verdict of a jury, when affirmed by the court sitting in the cause, will not be reviewed by this court, unless the court is satisfied that they erred in the premises on which they made their report. (St. L. & St. Jo. R. R. Co. vs. Richardson, 45 Mo., 466; 17 Mo., 376; 43 Barb. [N. Y.], 169; 24 Mo., 552; 2 How., 25; 6 How. Pr., 467; Abb. Dig. [Law of Corp.], 188.)

II. The court can only review the errors mentioned in the motion for a new trial. (Brady vs. Connelly, 52 Mo., 19.)

Sherwood, Judge, delivered the opinion of the court.

The proceeding, originally instituted by the Missouri Valley Railroad Co., of which the present plaintiff is the succes-

sor, had for its object the appropriation of a certain strip of land, to make what is known as a "Y," and to connect the road of the petitioner with the bridge at Kansas City, and the road then leading to the bridge, on the north side of the Missouri river.

The subjoined plat more fully illustrates my meaning.

*T. 50 N. R.33 W*

N

*Sec. 23.*

*Area shaded* ▦ = 4.31 *acres asked to be condemned*
*" " * ▦ = 4.65 *" not asked for.*

*H.& St. Jo. R. R.*

*Sec. 26*

*HARLEM*

We may remark at the outset, that there is a fatal defect observable in the record before us. It is this, that record does not show that the parties to this suit "cannot agree upon the proper compensation to be paid" for the land sought to be condemned. (Wagn. Stat., 326, § 1.)

This is a jurisdictional fact, and without it is apparent on the record, the court whose aid is sought, whether possessing special or general jurisdiction, is powerless to take any valid step in the premises. For, when the superior courts are engaged in the exercise of special and limited statutory powers, as in the present instance, they and their records occupy the same footing, and are subject to the same rules and tests, as courts whose jurisdiction is special and limited.

This point was so ruled in Ellis vs. Pacific R. R. (51 Mo., 200.) And the rulings of this court have been uniform, wherever it has been attempted by summary proceedings to divest the owner of his property, that the record must affirmatively show that the conditions precedent to the exercise of such extraordinary powers have been fully complied with. (Cunningham vs. Pacific R. R., 61 Mo., 33, and cases cited.)

As a matter of fact, the motion for a new trial and the one in arrest, both urged on the attention of the lower court the jurisdictional question on which we have been commenting; but this was quite immaterial, so far as concerns our action, whether this course was pursued or not, as this objection is a fundamental one, goes to the very foundation of the whole proceeding, and may be raised at any time and by any party.

There is another error patent of record, which is also sufficient to accomplish the reversal of the judgment of condemnation. I refer to the lack of service on the infant, William Campbell. Service of summons on a minor is to be had precisely as it must on an adult. (Wagn. Stat., 1007, § 7.) The provisions of section 9 of the same article, which permit a defendant to "acknowledge, in writing, indorsed on the writ, signed by his own proper signature, the service of such writ, and waive the necessity of the service thereof by an officer," are applicable only to adults, or those capable of acting for

themselves. For this reason it was incompetent, either for the infant to acknowledge service for himself, or for his guardian to make such acknowledgment for him. Nor is there any change effected in the ordinary manner of service of process on an infant in consequence of the statute in relation to appropriation of lands, providing, that where "the proceedings seek to affect the lands of persons under guardianship, the guardians must be made parties defendant." The only object of the provision was, doubtless, to obviate the necessity of appointing a guardian *ad litem*, the legislature probably regarding the interests of the minor safer in the hands of the general guardian, conversant as such person must be with the rights and interests of the infant, than in the hands of one appointed only for the occasion.

There is yet another error in this record, which should not escape severe animadversion. I speak of the damages assessed for the condemnation of the right of way. The damages thus assessed were $10,666. Reference has been made by defendant's counsel to the case of St. L. & St. Jo. R. R. Co. vs. Richardson (45 Mo., 466), where it is said with respect to the conduct of commissioners, "that unless the court is clearly satisfied that they have erred in the principles upon which they have made their appraisal, there is nothing for review, and their report should not be disturbed."

That language was never intended to apply to a case of this kind—a case conspicuous for the utter disregard displayed by the commissioners for the important trust that devolved upon them in consequence of their appointment.

It appears that the amount of damages was fixed by each of the three commissioners putting down an amount and then dividing the sum total by three. The land taken was thus estimated at $1,000 per acre, when one of the commissioners, as he states, did not know anything of the value of the land, did not think it was very valuable, did not determine in his own mind what it was worth, and did not put any special value on it in making his estimate.

The second commissioner says the land taken was in a wet place; that adjacent lands were selling at $100 per acre; and that, in his opinion, was what they were worth; but, still, from the best information he could obtain, he valued the land taken by plaintiff at $1,000 per acre. He erroneously assumed, as the evidence shows, that the land taken constituted a part of the Harlem town-site, and acting on this sheer assumption, he took that into consideration. The third commissioner stated, that he regarded the land along the plaintiff's road worth from $100 to $200 per acre; that the highest value of that land was the latter sum.

In addition to that the commissioners gave $1,600 additional damages for injury done to the other land of the defendants (though it does not specially appear in what that injury consisted), and, in estimating the amount of land taken, there was included in the estimate the land embraced within the "Y" and also a strip of land eight hundred feet long by fifty feet wide, running parallel with the Hann. & St. Jo. R. R., for neither of which pieces had plaintiff asked. The amount actually asked for was not quite four and a half acres; so that, in its practical effect, the estimate of the value of the land was really $2,000 per acre, in addition to which the commissioners gave, as before stated, what might be termed a *bonus* of $1,600 more.

The testimony of other witnesses, who were introduced, taken as a whole, does not materially vary as to value per acre from that of the two commissioners who testified on that point.

In an ordinary case, where opinions as to value might very well be variant, we would not closely scrutinize the report of the commissioners on that score; but where, as in the present instance, the damages assessed by them are so flagrantly excessive; where there are such manifest indications on their part of an entire lack of appreciation of the duties and responsibilities of their position; such obliviousness of the rudimentary principles of fairness and impartiality,

we cannot, consistently with our ideas of duty, hesitate to interfere.

. The judgment is reversed, and the cause remanded. Judge Vories absent ; the other judges concur.