HENRY WERZ, Respondent, *v.* MARY WERZ, *alias* MARY DINKELMANN, Appellant.

### July 15, 1881.

1. The doctrine of presumptions in support of jurisdiction considered at length.

2. Where superior courts are exercising special and limited statutory powers, and those powers are exercised in a special manner, not according to the usual course of courts of common law or chancery, their records must show every fact necessary to their jurisdiction. Suits for divorce do not come within this rule.

3. Proof that the defendant was formerly married to a third person, and that she had been divorced in a proceeding the petition in which failed to allege that she was a resident of the county in which the suit was brought, will not support a decree of divorce from a second marriage entered into subsequent to the first divorce proceedings.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and dismissed.*

DAVIS & REBENACK, for the appellant.

JOHN F. WIELANDY and R. W. JONES, for the respondent.

THOMPSON, J., delivered the opinion of the court.

In 1874, Mary Dinkelmann was, on her own petition, divorced from her husband, Frederick Dinkelmann, by a decree of the circuit court of St. Louis County. Her petition did not state that she was a resident of St. Louis County. She thereafter intermarried with the plaintiff in the present suit, who, after the lapse of five years, seeks a divorce from her in this proceeding.

The only question is whether the failure of Mary Dinkelmann to allege in her petition for divorce from her former husband, Frederick Dinkelmann, that she was a resident of St. Louis County, renders the decree of divorce which was made in that proceeding, void for want of jurisdiction, in such a sense that the prior marriage subsists and the subsequent marriage is a nullity. In order to determine this question, it is proper to consider, first, how the question stands upon the decisions of the supreme court and of this court.

In *Cheatham* v. *Cheatham* (10 Mo. 296), a petition for a divorce omitted to state that the complainant had resided within the state for one whole year next before the filing of the petition; nor did it state that the offence complained of as a ground for a divorce was committed within this state, or while one or both of the parties resided within this state. It was held that the omission of these averments rendered the petition *bad on demurrer*. In so holding the court said that " one or the other of these statements is made essential by the fourth section of the statute, to give jurisdiction to the court."

In *Kruse* v. *Kruse* (25 Mo. 68), *the evidence showed* that for fifteen or sixteen months prior to the filing of the petition, the petitioner had lived with her father in the

state of Kentucky. Upon this ground it was held that the circuit court properly dismissed the bill.

In *Cole* v. *Cole* (abstracted in 3 Mo. App. 571), a husband had procured a divorce from his wife in the circuit court of St. Louis County, and afterwards she filed a *motion to vacate the decree*, on the ground that it was procured through fraud and perjury, and without notice to her. The petition did not show that the petitioner had resided in the state of Missouri for twelve months next prior to the commencement of proceedings, nor that the offence complained of as ground for the divorce was committed within this state while both parties resided within it. Upon this ground the judgment of the circuit court vacating the decree for a divorce was affirmed. In the view taken by the learned judge who delivered the opinion of the court, the decree was *coram non judice* — a mere nullity, which might, at any time, be so declared or treated, and worth no more than so much waste paper.

In *Pate* v. *Pate* (6 Mo. App. 49), a petition for divorce failed to allege that the petitioner was *a resident of the county* in which the petition was filed. For want of this allegation, a motion was made to dismiss the petition after the pleadings in the case had been made up. This motion was sustained by the circuit court, and this ruling was, on appeal, affirmed in this court. In the opinion of this court the following language is held : " It is not enough, however, that jurisdiction in a divorce suit appear from the whole record ; the libel itself must allege every fact, the existence of which is by statute made necessary to the granting of the divorce ; and when this is not done in the petition, substantially as required by statute, the bill should be dismissed. The allegation of the replication that plaintiff and defendant resided in St. Louis in 1870, would have been insufficient, even if contained in the petition itself. In every case where a divorce is sought, it should appear plainly on the face of the petition that the facts giving juris-

diction to the court exist. 'Where superior courts are engaged in the exercise of special and limited statutory powers,' as is said by the supreme court in *Kansas, etc., Railroad Company* v. *Campbell* ( 62 Mo. 588), ' they and their records occupy the same footing, and are subject to the same rules and tests, as courts whose jurisdiction is special and limited.' Where a jurisdictional fact does not appear on the face of the petition, it follows that the court can take no valid step.''

In all of the foregoing cases, it will be observed, the proceeding was a *direct proceeding* by one of the parties to the decree. In the present case, the question is presented for the first' time in a collateral proceeding. It may be observed that where, in a collateral proceeding, a court is asked to declare a judgment or decree a nullity, the court is brought face to face with the consequences of its action, and it acts under a very different measure of responsibility from that which it assumes when the validity of a judgment or decree is questioned in a direct proceeding.

We know that prior to the decision of this court in *Pate* v. *Pate (supra)*, it was not the practice of members of the profession, in drafting petitions in divorce proceedings, to state that the petitioner was, at the date of the making of the petition, a resident of the county within which the suit was brought. In 1855, the legislature adopted the following resolution : " That the *form-book* * * * prepared by the committee on revision, be adopted and published with the Revised Statutes, as provided by law." Adjd. Sess. Acts 1855, p. 534. The revision of the statutes adopted in that year also provides that " the forms adopted at the present session of the General Assembly, * * * shall be printed in the appendix and published with the Revised Statutes." The forms thus adopted by the legislature were published in the revisions of 1855, in the General Statutes of 1865, in every edition of Wagner's Statutes, and in the revision of 1879. Among them is a form of the petition of a wife for a divorce. Rev. Stats.

1855, p. 1620; Rev. Stats. 1879, p. 704. This form contains the allegation that the plaintiff has resided in this state one whole year next before the filing of the petition; but it contains no allegation that the plaintiff is a resident of the county in which the suit is brought. The same legislature which adopted this form and ordered it to be published in the revision, enacted a statute relating to divorce and alimony, the fourth section of which contains the same clause as section 2 of the General Statutes under which the decision of this court in *Pate* v. *Pate* was rendered, namely: that " the proceedings shall be had in the county where the plaintiff resides." Under a settled rule of statutory interpretation, this form may be looked to to explain the meaning which the legislature intended to be placed upon the statute; and, taking it so, there can be no doubt that this section of the statute was not intended to declare a fact essential to jurisdiction, but was merely intended to prescribe the venue, a statement of which need not be embraced in the body of the petition. If the suit is not brought in the county of the plaintiff's residence, that is a fact pleadable in abatement; and, unless pleaded in abatement, it is waived.

So far as I can learn, the profession have generally acted upon this view. My inquiries upon this subject lead me to believe that nearly all the divorces which were granted within this appellate district, prior to the judgment of this court in *Pate* v. *Pate*, were founded upon petitions which did not contain this allegation. These divorces have been followed in most cases, no doubt, by marriages, and children have been born of these marriages. If we are now to hold that these marriages are mere nullities, and that either party to one of these marriages is at liberty to have it set aside at pleasure upon application to the court for that purpose; if we lay down a rule which will make the parties to these marriages liable under the criminal statute for open and notorious adulterous cohabitation, the very greatest evils and

hardships will result. If it were necessary to do so in order to avoid these consequences, I should not hesitate to express myself in favor of overruling the decisions of this court both in *Cole* v. *Cole* and in *Pate* v. *Pate.* In my opinion the language of the learned judges, who respectively delivered the opinions in those cases, that a mere failure to aver a jurisdictional fact in the petition renders the whole proceeding a mere nullity, cannot be sustained upon sound principles. Certainly the doctrine thus laid down cannot be carried so far as to render decrees in divorce proceedings, which omit to recite the jurisdictional facts in question, open to collateral attack. The question in such cases is, not whether, in point of fact, the court had jurisdiction, but whether it was competent to ascertain whether it had or not, and whether it must have ascertained that it had, before proceeding to judgment. If its record show affirmatively that it had not jurisdiction, there is an end of controversy, for its judgment is void. If its record is silent on the question, then the question is whether the character of the court and the nature of the proceeding are such that jurisdiction will be presumed. Jurisdiction, as I understand the rule, will always be presumed where the court which rendered the judgment was a court of record having jurisdiction over the subject-matter of the proceeding, and where the proceeding itself was conducted according to the ordinary course of proceedings at common or law in equity.

It is true that it has been settled in this state, as in many other jurisdictions, that when superior courts are engaged in the exercise of special and limited statutory powers, they and their records occupy the same footing, and are subject to the same rules and tests, as courts whose jurisdiction is special and limited; in which case it is necessary to the validity of their judgments or decrees that every fact necessary to their jurisdiction should appear upon the face of their records. *Kansas, etc., R. Co.* v. *Campbell,* 62 Mo. 585, 588; *Johnson* v. *Beazley*, 65 Mo. 250, 255.

There is danger, however, in applying doctrines which are sometimes broadly laid down in judicial opinions, without attending to the limitations which surround them. The rule in question, as I understand it, is not only confined to cases where superior courts are engaged in the exercise of special and limited statutory powers, but there must be the additional circumstance that those powers are exercised in a special manner, not according to the usual course of courts of common law or courts of chancery. The case of *Kansas, etc., Railroad Company* v. *Campbell* (*supra*), where this doctrine was laid down in the general terms above quoted, was a case of this kind. It was a summary proceeding under our statute to condemn land for the building of a railroad ; and the court said, further on in its opinion, with much propriety, that the rulings of the supreme court have been uniform, whenever it has been attempted, *by summary proceedings*, to divest an owner of his property, that the record must affirmatively show that the conditions precedent to the exercise of such extraordinary powers have been fully complied with. The distinction to which I allude is clearly laid down by the supreme court of the United States in *Harvey* v. *Tyler* ( 2 Wall. 328, 342 ) ; and also in *Galpin* v. *Page* (18 Wall. 350, 371) ; and by the court of appeals of Virginia, in *Pulaski Co.* v. *Stuart* ( 28 Gratt. 872, 879 ).

In the first of these cases it is said by Mr. Justice Miller, in giving the judgment of the court: " The jurisdiction which is now exercised by the common law courts in this country is, in a very large proportion, dependent upon special statutes conferring it. Many of these statutes create, for the first time, the rights which the court is called upon to enforce, and many of them prescribe with minuteness the mode in which those rights are to be pursued in the courts. Many of the powers thus granted to the court are not only at variance with the common law, but often in derogation of that law. In all cases where

the new powers thus conferred are to be brought into action in the usual form of common law or chancery proceedings, we apprehend there can be little doubt that the same presumptions as to the jurisdiction of the court and the conclusiveness of its action will be made, as in cases falling more strictly within the usual powers of the court. On the other hand, powers may be conferred on the court, and duties required of it, to be exercised in a special and often summary manner, in which the order or judgment of the court can only be supported by a record which shows that it had jurisdiction of the case." *Harvey* v. *Tyler*, 2 Wall. 328, 342.

In *Galpin* v. *Page* (18 Wall. 350, 371), Mr. Justice Field, in giving the judgment of the court, quoted the doctrine we are examining, as thus laid down by the supreme court of New Hampshire : "A court of general jurisdiction may have special and summary powers, wholly derived from statutes, not exercised according to the course of the common law, and which do not belong to it as a court of general jurisdiction. In such cases its decisions must be regarded and treated like those of courts of limited and special jurisdiction. The jurisdiction in such cases, both as to the subject-matter of the judgment and as to the persons to be affected by it, must appear by the record ; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it." *Morse* v. *Presley*, 25 N. H. 299, 302. " The qualification here made," said Mr. Justice Field, " that the special powers conferred are not exercised according to the course of the common law, is important. When the special powers conferred are brought into action according to the course of that law, that is, in the usual form of common law and chancery proceedings, by regular process and personal service, where a personal judgment or decree is asked, or by seizure or attachment of the property when a judgment *in rem* is sought, the same presumption of jurisdiction will usually attend the

judgments of the court as in cases falling within its general powers. Such is the purport of the language and decision of this court in *Harvey* v. *Tyler* (*supra*). But where the special powers conferred are exercised in a special manner not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction, upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record."

After quoting from these opinions, the court of appeals of Virginia in the case above referred to (*Pulaski Co.* v. *Stuart*, 28 Gratt. 879), laid down the following legal propositions as of universal application : —

"1. Where a court of general jurisdiction acts within the scope of its general powers, its judgments will be presumed to be in accordance with its jurisdiction, and cannot be collaterally impeached.

"2. So, also, where a court of general jurisdiction has conferred upon it special powers by special statute; and such special powers are exercised *judicially*, that is, according to the course of the common law and proceedings in chancery, such judgment cannot be impeached collaterally.

"3. But where a court of general jurisdiction has conferred upon it special and summary powers, wholly derived from statutes, and which do not belong to it as a court of general jurisdiction, and where such powers are not exercised according to the course of the common law, its action being ministerial only, and not judicial, in such case its decisions must be regarded and treated like those of courts of limited and special jurisdiction, and no such presumption of jurisdiction will attend the judgment of the court; but in such cases the facts essential to the exercise of the special jurisdiction must appear upon the face of the record."

Other cases could be collected which bear out the state-

ment that the general presumption which is indulged, in support of the judgments and decrees of superior courts, is confined to proceedings in such courts which are according to the course of the common law — by which is meant, according to the usual course obtaining in courts of common law and courts of equity. *Gray* v. *Larrimore*, 2 Abb. U. S. 542, 549 ; *The State* v. *Lewis*, 22 N. J. L. 564 ; *Kempe* v. *Kennedy*, 5 Cranch, 173, 186 ; *Huntington* v. *Charlotte*, 15 Vt. 64 ; *Ells* v. *Railroad Co.*, 51 Mo. 200, 203. On the other hand, an examination of the cases where this presumption has been withheld, will, it is believed, show, in nearly every instance, that the proceeding was summary, or contrary to the ordinary rules of common law and equity procedure, and that the courts in their judgments have laid stress on this fact. *Francis* v. *Washburn*, 5 Hayw. 294 ; *McNairy* v. *Eastland*, 10 Yerg. 310 ; *Singleton* v. *Bell*, Cooke, 267 ; *Porter* v. *Webb*, 4 Yerg. 161 ; *Barry* v. *Patterson*, 3 Humph. 313 ; *Gray* v. *Steamboat*, 6 Wis. 59 ; *Prentiss* v. *Parks*, 65 Me. 559, 562 ; *McClung* v. *Ross*, 5 Wheat. 116 ; *Thatcher* v. *Powell*, 6 Wheat. 119, 127.

It is to be confessed, however, that there is not entire uniformity in the decisions of the courts in the application of these principles. The jurisdiction of the courts of the United States is, both as to persons and subjects of litigation, special and limited ; and yet formerly, as stated by Chief Justice Marshall, in *Ex parte Watkins* (3 Pet. 207), it was " universally understood that the judgments of the courts of the United States, although their jurisdiction be not shown in the pleadings, are yet binding upon all the world ; and that this apparent want of jurisdiction can avail a party only on a writ of error." " The judgment of the circuit court " [of the United States], continued he, in a criminal case, " is of itself evidence of its own legality, and requires for its support no inspection of the indictments upon which it is founded." See also *McCormick* v. *Sullivant*, 10 Wheat. 192 ; *Kemp* v. *Kennedy*, 5 Cranch, 185 ;

*Skellern* v. *May*, 6 Cranch, 267 ; *Ruckman* v. *Cowvell*, 1 N. Y. 505 ; *Thompson* v. *Lyle*, 3 Watts & S. 166 ; *Reed* v. *Vaughn*, 10 Mo. 447 ; *Hays* v. *Ford*, 55 Ind. 52.

The supreme court of the United States has, however, in a late case, apparently overturned these cases, but without citing them, or any other case. It holds that "the facts upon which the jurisdiction of the courts of the United States rests must in some form appear in the record of all suits prosecuted before them. To this rule there are no exceptions. * * * There are no presumptions in favor of the jurisdiction of the courts of the United States." *Ex parte Smith*, 94 U. S. 455.

Passing from these, we find that our own Supreme Court, in a very considerate judgment, has recently held that the records of our courts of probate, relating to the subject of the administration of estates, are entitled to the same presumptions in favor of their jurisdiction as those which attend the records of superior courts of record, when acting in virtue of their general powers and according to the course of the common law. *Johnson* v. *Beazley*, 65 Mo. 250.

The supreme court of Michigan has gone still further, in one case, and applied this presumption to the judgment of a justice of the peace. There, an action was brought on the transcript of a judgment of a justice of the peace. It appeared from the transcript that the summons was served but two days prior to the trial. A "short summons," that is, one returnable within six days, was allowed by statute to issue only where the defendant was a non-resident of the county. In other cases the summons could not be returned in less than twelve days. It was held that, in the absence of any evidence on the subject, it would not be presumed, for the purpose of defeating the justice's judgment, that the defendant was a resident of the county. *Allen* v. *Mills*, 26 Mich. 123.

Here, then, we have this anomalous result : The cir-

cuit and district courts of the United States are presided over by men eminent for their learning, who hold their offices during good behavior. The probate courts in Missouri, and justice's courts in Michigan, are frequently presided over by men unlearned in the law, elected for brief terms. And yet a presumption of jurisdiction is accorded to the proceedings of the two latter which is denied to the former.

Looking still further, we find that the very question before us arose in Vermont, where, on a question as to the settlement of a pauper, the validity of a divorce was called in question, on the ground that it did not appear from the record, nor from the clerk's docket, that the plaintiff in such suit had such a residence in the state as gave the supreme court jurisdiction to grant the divorce. The court held that it was not necessary that the fact should appear. The supreme court being a court of enlarged jurisdiction, it would be presumed. *Huntington* v. *Charlotte*, 15 Vt. 46. But this decision is helped by a later decision in that state, that the ecclesiastical law of England was adopted by the legislature, in adopting the English common law, in so far as it was applicable to their situation, and not repugnant to their constitution and laws. *LeBarron* v. *LeBarron*, 35 Vt. 367. On the other hand, the Supreme Judicial Court of Massachusetts has held that a record certified by the clerk of one of the district courts of California, — which purported to be a " record of true judgment and decree of divorce as entered in judgment-book B in said court in the case of *Ivory M. Blood*, plaintiff, v. *Mary Blood*, defendant, No. ——," which record runs as follows: " In judgment-book B, 24th day of May, A. D. 1856, a judgment for a decree of divorce is recorded, dissolving the bonds of matrimony between Ivory M. Blood, of San Francisco, state of California, and Mary Blood, of Hartford, state of Connecticut," which exemplification of record was

also certified by the judge of the court, who certified that the court was a court of record, having a clerk and seal, — was not admissible in evidence for the defendant upon an indictment for adultery. The ruling proceeded upon the ground that there was no proof that the court in California had jurisdiction of the cause and the parties. Although a court of record, its jurisdiction over the subject of divorce was deemed a special authority, not recognized by the common law, and its proceedings in relation to it were held to stand on the same footing with those of courts of limited and inferior jurisdiction; so that its powers in the case must be shown and appear to have been strictly pursued. *The Commonwealth* v. *Blood*, 97 Mass. — . The opinion was *per curiam*, and contained only the language quoted, and cited no authority. It may be observed that the so-called record was not a record *in extenso*, of a court proceeding, or even a formal entry of a judgment; it was merely a certified transcript of an abstract on a judgment docket.

Other cases will be found which, in conformity with the doctrine of the last case, withhold the usual presumption of jurisdiction from the judgments of *foreign tribunals* in statutory proceedings, on the ground that the statute under which the proceeding was had, not being pleaded and proved, it could not be known whether the proceeding in the foreign tribunal was in conformity with it or not. *Foster* v. *Glazener*, 27 Ala. 391; *Holmes* v. *Braughton*, 10 Wend. 75; *Walker* v. *Maxwell*, 1 Mass. 104. In Kansas, however, the courts take judicial notice of the constitutions of sister states so far as to determine whether a given tribunal of such state was one of general jurisdiction; and when this appears, the Kansas court presumes, in the absence of evidence to the contrary, that the foreign court had the authority which it presumed to exercise, and that the modes of procedure pursued by it, though different from those established by the laws of Kansas, were authorized

by the laws of the state in which such court existed. *Dodds* v. *Coffin*, 15 Kan. 277; *Ward* v. *Baker*, 16 Kan. 31.

It may be conceded that the power to grant divorces is a power specially conferred upon the circuit courts by the legislature. It is true that these courts have, under the constitution, "exclusive original jurisdiction in all civil cases not otherwise provided for." Const., Art.VI., sect. 22. But as the ecclesiastical law of England was not, perhaps, adopted by our legislature in adopting the English common law, no court in this state had power to grant a divorce until the legislature gave it such power. The legislature might, in giving a right of action for divorce, have created a special tribunal to hear such causes, but it chose to confer the jurisdiction on the circuit court. If it had simply created the right of action without prescribing what courts should have jurisdiction of it, the circuit court would have had such jurisdiction by virtue of the constitution. But nevertheless it may be treated as a case of a special power conferred by the legislature. It is also true that the power is in several respects a limited power. The causes for which divorces may be granted are defined by the statute, and obviously divorces for other causes are prohibited by implication. The statute also imposes certain restrictions with reference to the jurisdiction over the person. It also provides that no divorce shall be granted in case of collusion between the parties. But, with these exceptions, a divorce proceeding, as it is conducted in our courts, does not essentially differ from civil actions in the nature of a suit in equity, in which the court resolves both the law and the facts, without a jury. The statute relating to divorce provides that "all such cases shall be tried by the court, and the like processes and proceedings shall be had in such cases as are had in other civil suits." The proceeding is in no sense a summary proceeding. On the contrary, the court proceeds in it in substantially the same manner as in

an action to rescind a contract for fraud or mistake, to reform a contract, or to compel specific performance of it according to its terms.

If we were to take the view of the plaintiff in this case, it may be useful to consider how our decision would stand in comparison with the decision of the supreme court, already cited, with reference to the jurisdiction of the probate courts. *Johnson* v. *Beazley*, 65 Mo. 250. These courts are not created by the constitution, but by the legislature. The subjects of their jurisdiction are limited and special. They do not proceed according to the course of courts of common law or courts of chancery. No formal pleadings are had in causes in them. The steps which are to be taken in the various proceedings before them are defined by statute. No writ of error, or appeal in the nature of a writ of error, lies to correct their proceedings; but causes appealed from them are heard in the circuit court *de novo*, the same as causes appealed from justices of the peace. If no presumptions are to obtain in favor of the jurisdiction of the circuit courts in divorce proceedings, when proceeding upon formal pleadings substantially according to the course of a court of equity, it would certainly seem that, for stronger reasons, no presumption should obtain in favor of the jurisdiction of the probate court in any case. But the supreme court hold the reverse of this. In the case alluded to it is said by Henry, J., that "jurisdiction of probate courts is not, like that of justices of the peace, confined to special cases in which the jurisdiction must appear, but their jurisdiction pertaining to wills and administrators is general. The subjects of their jurisdiction is clearly defined, and any action of theirs outside of such subjects would be of no force or validity; and the same may be said of the circuit court. But their action on subjects exclusively and originally confided to them is entitled to the same weight as that of any other court of record." It would be a singular anomaly in our law, if, as

I understand this case to hold, in an action of ejectment on an administrator's deed, all the steps giving the probate court jurisdiction to order the sale of the land of the deceased person are to be presumed to have been regularly taken, without those steps appearing upon the court's records; and yet a marriage is to be treated as null and void after a cohabitation of several years, because one of the parties had been previously divorced from a husband still living, in a proceeding in the circuit court, the only irregularity in which was the omission of the petitioner to state in her petition that she was a resident of the county in which the petition was filed.

We ought also to consider how an extension of the rule we are supposed to have adopted will affect judgments which have been rendered in other statutory actions. The right of action for a divorce is not the only right of action which has been conferred in this state by statute. We have, for instance, a statute giving a right of action for damages for injuries which have resulted in death. This statute, like our statute of divorce, is in derogation of the common law. But, like our statute of divorce, a proceeding under it is conducted in court like an ordinary lawsuit; the only difference being that the one proceeds as an action at law and the other as a suit in equity. Are the usual presumptions of jurisdiction to be withheld from all judgments which have been rendered in the circuit courts of this state in actions at law for damages for injuries resulting in death? I take it not. I cannot recall a case in which it was suggested that the jurisdiction of the courts over such actions is limited and special in the sense of the rule we are considering.

Again, at common law, no action lies against a municipal corporation for damages resulting to an owner of land from changing the grade of a street. We have a statute, or municipal ordinance giving such an action in certain cases.

Must every jurisdictional fact appear in such a suit in order to support the judgment in a collateral proceeding?

Again, at common law, a stockholder is not liable to pay the debt of the corporation. *Gray* v. *Coffin*, 9 Cush. 199. Statutes in many states make him so liable on prescribed conditions. Suppose a judgment has been rendered in a court of general jurisdiction against a stockholder on such a liability, and land has been sold under it, and purchased by a stranger to the suit, who brings ejectment for possession; is his action of ejectment for possession to fail, unless it appear that every fact upon which the statute founded the liability of the stockholder was pleaded by the plaintiff in the suit against the stockholder?

It is to the interest of the public that there should be an end to litigation, and that rights which have been settled in the ordinary judicial tribunals should remain undisturbed. It is of the highest importance that this should be so where the rights which have been litigated relate to property; it is of still greater importance where those rights relate to the domestic *status*. Courts will always treat as nullities the judgments of tribunals which appear to have had no jurisdiction; for a judgment without jurisdiction is mere usurpation, and the enforcement of such a judgment is oppression. But if the usual presumption of jurisdiction is to be withheld from superior courts of record in all cases where they exercise statutory powers, the rights of litigants in such cases will always remain at extreme hazard. An error of counsel in omitting a jurisdictional statement in drafting a petition, or an error of the clerk in omitting such a statement in entering a judgment, may overturn, after many years, when it is impossible to put the parties *in statu quo*, rights which, after an expensive and vexatious litigation, were supposed to have been finally settled. This is not the policy of the law, nor is it the law. The sound rule laid down by the supreme court of the United States

in *Harvey* v. *Tyler* (2 Wall. 328, 342), and in *Galpin* v. *Page* (18 Wall. 350, 371), will save the courts from these perplexities and society from these dangers.  The learned judge of the circuit court, in giving judgment for the plaintiff in this case, followed the rule of this court in *Pate* v. *Pate* (6 Mo. App. 49).  We are now constrained to hold that the doctrine of that case cannot be invoked for the purpose of impeaching, in a collateral proceeding, a judgment of the circuit court, granting a divorce.

For these reasons the judgment is reversed.  As the petition sets up no other ground for divorce than the one we have considered, it is dismissed.  Judge LEWIS concurs ; Judge BAKEWELL dissents.