STATE OF MISSOURI, EX REL. C. H. ALBERS ET AL., *v.* W. H. HORNER, JUDGE, Respondent.

May 3, 1881.

1. *Mandamus* will lie to compel the trial court to enter judgment upon a second verdict for the plaintiff, where the court has announced that a new trial will be granted unless a *remittitur* be entered.

2. Where a new trial has been granted each party the court has no discretion to grant a third trial, unless the jury have erred in a matter of law or have been guilty of misbehavior.

3. An amendment changing the issues by abandoning a claim for special damages will not warrant the court in granting the plaintiff a second new trial.

4. It is immaterial that the amended petition contains a prayer for exemplary damages ; it may be treated as surplusage.

5. The rule that a pleading is to be taken most strongly against the pleader will not authorize a forced or unnatural construction to be placed upon the words used.

ON DEMURRER TO RETURN. — 1. A party applying for a second new trial must show that at the last trial the jury erred in a matter of law or were guilty of misbehavior.

2. That the first new trial was granted for error in law of the jury, will not authorize the court to exercise a discretion and grant a second new trial for other causes.

ON MOTION FOR AN APPEAL AND SUPERSEDEAS. — 1. An appeal lies to the Supreme Court from an order of the St. Louis Court of Appeals awarding a peremptory writ of *mandamus* directing a judge of the Circuit Court to enter a judgment in a cause pending before him.

2. In such a case the appeal and the filing of approved recognizance will not operate a *supersedeas*.

APPLICATION for *mandamus*.

*Writ issued.*

MARSHALL & BARCLAY, for the relators.

NOBLE & ORRICK, for the respondent.

THOMPSON, J., delivered the opinion of the court on a demurrer to the petition.

This is a petition for *mandamus* to compel the respondent, who is a judge of the Circuit Court of the city of St. Louis, to enter judgment in a cause pending before him, in which the plaintiffs have, on a third trial, recovered a verdict for $3,500 damages. The grounds of the application are, that there have been three trials, in the first and last of which verdicts were rendered for the plaintiffs, the second having been a mistrial; that, notwithstanding this, the respondent, in disregard of section 3705 of the Revised Statutes, has entered an order to the effect that, if the plaintiff will remit $1,500 of the verdict, he will overrule the motion for a new trial, otherwise the motion will be granted.

The statute is as follows : " Only one new trial shall be allowed to either party, except, first, where the triers of the fact shall have erred in a matter of law ; second, where

the jury shall be guilty of misbehavior.'' 1 Rev. Stats., sect. 3705. In *Hill* v. *Wilkins*, 4 Mo. 86, it was held that where the judge of a circuit court assumes to set aside a second verdict for a cause not permitted by this statute, the Supreme Court will, by *mandamus*, compel him to enter judgment upon the verdict. In later cases *mandamus* is said to be the only remedy applicable to such a case. *Boyce* v. *Smith*, 16 Mo. 317 ; *Leahey* v. *Dugdale*, 41 Mo. 517.

It is familiar law that *mandamus* will not lie in any case unless the right of the petitioner to invoke this remedy is clear. To entitle the petitioner to this remedy, in the present case, it is therefore apparent that he must make it appear, first, that there have been two trials upon the same cause of action, and upon substantially the same issues (*Boyce* v. *Smith*, 16 Mo. 321), in both of which the petitioner has had a verdict in his favor; secondly, that the court below has set aside the last verdict, although it is of opinion that the jury have not erred in matter of law and have not been guilty of misbehavior. And the questions we have to determine are, do these things appear in this case.

1. Have the petitioners had two verdicts on the same cause of action, and on substantially the same issues? It appears that the action in the court below was for damages for malicious prosecution in wrongfully suing out an attachment against the petitioners. At the first trial the petitioners had a verdict in their favor for the sum of $1,508.07, which verdict was set aside and a new trial granted. Before the second trial, the plaintiffs, by consent, and without any formal entry on the records of the court, amended their petition. The defendants made no corresponding amendments in their answer, but the parties went to trial the second time, on the issues made by the petition as thus amended and the answer which had been previously filed. The amendment to the petition consisted in striking out certain allegations with regard to the nature of the damages which the plaintiff had sustained, and inserting others ; the

aggregate of damages claimed in the amended petition remaining the same as in the original petition. The nature of the amendment will best be seen by a comparison between the matter stricken out and the matter inserted.

The matter stricken out read as follows : " That, by reason of said suit, the credits and money of plaintiffs, to the amount of several thousand dollars, were attached, and they were deprived of their use for a long time ; their credit was impaired and damaged ; their business and reputations were greatly injured ; and they were obliged to expend and become liable for a large sum of money in and about the defence of said unfounded suit ; and in these and in many other respects, they were and are damaged by reason of said premises, in the sum of $5,000."

The matter inserted read as follows : " That by reason of said suit and attachment, plaintiff's credit as such firm was impaired and damaged, and their business was greatly injured ; and they. are also entitled, by reason of said premises, to exemplary damages from defendant herein, in all, as aforesaid, in the sum of $5,000 damages."

It cannot be denied that this amendment worked a substantial change in the issues to be tried. But how did it work a change ? It narrowed the plaintiff's claim by eliminating certain allegations of special damage, without enlarging it by substituting any new claim. It amounted to an abandonment by the plaintiff of his claim for special damages for being deprived of the use of the money attached, and for being forced to expend large sums of money in the defence of the attachment suit. With these exceptions the petition claimed the same damage as before, with an additional claim for exemplary damages, — the whole not to exceed $5,000, the aggregate of damages previously claimed. It is familiar law, as stated in the respondent's brief, that special damages, being such damages as are not in law presumed to flow as a necessary consequence from the wrongful act complained of, must be averred in the plaintiff's declara-

tion or petition, and proved as laid. And where, as in this case, the plaintiff avers and the defendant denies, that he has sustained such damages, the question whether such damages were in fact sustained, is one of the issues to be tried. On the other hand, it is not necessary in order to recover exemplary damages, that such damages should be asked for in the declaration or petition ; and the prayer for exemplary damages in a petition is mere surplusage — unnecessary matter, which has no effect either way on the issues to be tried. The effect of the amendment was, therefore, nothing more than a *non pros.* by the plaintiff as to certain items of special damage. It thus appears that every question which could have been raised, and every issue which could have been tried, under the pleadings, after the petition was amended, could have been raised and tried under the pleadings before it was amended. This being so, the change which was made in the issues by the amendment was not of such a nature as to disentitle the plaintiff to have judgment entered on the second verdict. *Railroad Co.* v. *Hackney,* 1 Head, 169. It rather constitutes a stronger reason why he should have such judgment. This position of the respondent is, therefore, not well taken.

2. Does it clearly appear, from the petition and the facts which the parties have agreed upon in the stipulation which they have filed, that the respondent refuses to enter judgment upon the second verdict, and threatens to grant a new trial for other causes than error of the jury in matter of law or misbehavior of the jury? The respondent's counsel insists that it does not, and in support of this contention he makes the following plausible suggestion : " Suppose the evidence showed the actual damages to have been $2,000 — the verdict amounting to $3,500 ; and suppose the court had instructed the jury that under the evidence exemplary damages could not be allowed by them, and the jury had misread the instruction, and had understood from it that such damages could be allowed ; would not the court,

under such circumstances, have had the right to presume
that the jury had committed an error of law in this respect,
and that it could be cured by the *remittitur?*" We should
answer that this might be so ; but we cannot resort to such
a supposition, on the face of the papers before us, because
we think it an improbable supposition. It is, indeed, a rule
which, we think, holds good under any system of pleading,
that the allegations made in a pleading are, when interpreted,
to be taken most strongly against the pleader. But this does
not mean, even under the strict rules applicable to a petition
for *mandamus*, that, in the interpretation of a pleading, a
court is at liberty to go so far against the pleader as to put
upon his words a forced, unnatural, or improbable meaning.
It means only that the meaning of the pleader's words will
not be extended by intendment or construction beyond the
natural or legal import of the words themselves. Here it
appears from the petition that, the plaintiff having recovered
a second verdict upon the same cause of action, the court
has entered the following order : "It is ordered by the
court that the motion heretofore submitted herein for a new
trial be overruled, upon the condition, however, that plain-
tiffs remit within five days the sum of $1,500, part and
parcel of the judgment heretofore rendered herein ; and if
said plaintiffs fail to remit as aforesaid, then the said motion
for a new trial be sustained." A fair and natural interpre-
tation of this order is that the respondent, sitting as a judge,
is of opinion that the jury have neither erred in matter of
law nor been guilty of misconduct, and therefore he will
enter a judgment on their verdict to the amount of $2,000 ;
but that he is also of opinion that the verdict is excessive to
the extent of $1,500, and therefore he will grant a new
trial, — not for error of law nor misconduct of the jury,
but for excess in the verdict, — unless the excess is remitted.
In the absence of a showing that the respondent gave any
other reasons for his decision, we feel bound to hold that

such was the meaning of his order. The judges of the Circuit Court are not bound in any case to give reasons for their decisions, although they are at liberty to do so. If, on such an application as this, in the absence of any announcement by the judge of his reasons for granting a new trial, it were permissible for us to resort to remote conjecture in order to support the action of the judge, and to take the case out of the statute, we can conceive of no case where a judge grants a second new trial, without assigning any reasons therefor, in which the plaintiff could invoke an effective remedy by *mandamus* — which, as before stated, the Supreme Court has declared to be the only remedy. If, indeed, the circuit judge was moved by the reason conjectured by his counsel, or by any similar reason, to make the order in question, we apprehend that he will be at liberty to show that fact in his return, and that the fact, if shown, will be a good reason for refusing a peremptory writ. For the rule is well settled and imperative, whether a writ of *mandamus* is asked for to compel the doing of an act by a judicial or by a ministerial officer, that the writ will never go to compel the doing of an act which involves, in any substantial degree, the exercise of a discretion by the officer. It is only where an act is plainly required to be done by law, and where the law has committed to the officer no discretion to refuse the doing of it, or where his discretion in the premises has been exhausted, that the writ will issue. These are familiar principles, and need not be enlarged upon.

The demurrer to the petition is overruled. The respondent will, on application, be allowed a reasonable time in which to make a return; in default of which a peremptory writ will issue. Judge BAKEWELL concurs; Judge LEWIS did not sit.

LEWIS, P. J., delivered the opinion of the court on a demurrer to the return.

The respondent makes return to the alternative writ of

*mandamus*, showing, in effect, that the first new trial in the case of *Albers et al.* v. *Bartholow et al.*, was granted on account of one of the exceptional causes mentioned in section 3705 of the Revised Statutes, to wit: That the jury erred in a matter of law; and this because of errors committed by the court in the giving and refusing of instructions. The petitioners demur to this return, as setting forth no facts sufficient in law to prevent the issuing of a peremptory writ.

We do not understand the statute as making any grounds for the first granting of a new trial an exception to the rule which forbids more than one new trial in favor of the same party. Our interpretation is that when a party applies a second time for a new trial, he must be able to show that in the last trial, of which he now complains, the jury erred in a matter of law, or were guilty of misbehavior. The interpretation advanced by the respondent would open the way to an endless succession of new trials for other causes, whenever the first happened to be granted because of error in a matter of law, or misbehavior of the jury. The statutory condition or exception would thus be satisfied. This would supersede the limitation of one new trial to the same party, and no limitation whatever would then remain. The causes of the first new trial would furnish a complete answer to every objection against successive applications, however numerous they might be. The only rational interpretation, which will give effect to the statute, as manifestly intended by its framers, is that which requires the statutory exceptions, or one of them, to exist with reference to the last previous trial, when a second new trial is to be granted in behalf of the same party.

The return also sets up the changes of issues in the cause, substantially as shown in the present petition, and as fully disposed of in our opinion delivered on the demurrer thereto. The demurrer to the return is sustained, and a peremptory writ will issue as prayed for. All the judges concur.

LEWIS, P. J., delivered the opinion of the court on motions for an appeal with stay of execution, and for a peremptory writ.

The respondent's motion for an appeal with stay of execution, and the petitioner's motion for a peremptory writ, will be considered together.

We have no hesitation in admitting the respondent's right of appeal to the Supreme Court from the order of this court awarding a peremptory *mandamus* against him. It was held in *Ex parte Skaggs*, 19 Mo. 339, that such an order, made by the Circuit Court, was a proper subject for appeal. The Constitution, Article VI., section 12, authorizes appeals from this court to the Supreme Court in cases where " any State officer is a party." The respondent, as judge of the St. Louis Circuit Court, is unquestionably a State officer within the meaning of this provision. The attempted distinction between the court and the judge, designed to avoid an application of the provision to the present proceeding, is futile. The fact that *mandamus* may lie against either the court or the judge, only illustrates how utterly the law repels such a distinction as having any possible influence in ascertaining the rights of the parties. A direction to the court will be nugatory if it be not obeyed by the judge. A mandate laid upon the judge for a judicial purpose, must find its effect in the proceedings of the court. The distinction is sometimes important with reference to the respective functions that may be performed by the court, or by the judge only, but for the purposes of the present inquiry the distinction is without a difference.

An appeal was unknown to the common-law procedure. It obtained in the civil-law practice and in equity jurisdictions. In its primary application it takes the whole cause up to the higher tribunal, there to be fully tried anew, without regard to what was done in the lower court. The common-law writ of error simply referred a question or

questions of law to the superior court, pending whose decision the ultimate adjudication remained in abeyance. Thus it is said that the issuing of the writ of error, *proprio vigore*, operated a *supersedeas*. *Perkins* v. *Woolaston*, 1 Salk. 321 ; *Capron* v. *Archer*, 1 Burr. 340. Prior to the statute of 9 Anne, chapter 20, the return upon the alternative writ of *mandamus* was not traversable. It was taken as absolutely true, and the court proceeded to award or refuse the peremptory writ upon the facts thus presented. No record was made, and no writ of error lay. After the statute, which permitted a traverse of the return, and other pleadings on either side, it was held in King's Bench that error would lie in *mandamus* as well as in other cases. But the effect was declared to be exceptional. By reason of the peculiar nature and purposes of the proceeding, it was determined that the writ of error would not operate a *supersedeas* of the peremptory *mandamus*. A contrary rule would destroy the efficacy of the writ, and would violate the statutory command " that, in case judgment were given for the *mandamus*, a peremptory *mandamus* should be granted without delay." *Dean* v. *Dowgatt*, 1 P. Wms. 348. The same command is incorporated in our statute (Rev. Stats., sect. 3260), and the spirit of the ruling just mentioned appears in all the American adjudications bearing on that subject. The House of Lords ultimately put a stop to all interferences with the peremptory writ, by deciding that " no writ of error will lie upon award of peremptory *mandamus*. 2 Bro. P. C. 554.

It appears to have been uniformly considered, in both England and America, that when a court of competent jurisdiction has solemnly and in due course of law, awarded a peremptory *mandamus*, any delay in its issuance, to be brought about by the party against whom it is awarded, under a claim for a review by a higher court, or upon any ground whatever, would be repugnant to the very nature of the writ, and subversive of its purposes, even if there

were no statute commanding that it be granted "without delay." *Mandamus* adjudicates no question of ultimate right in any case. It may determine a question of possession, or may adjust the *status* of parties, preliminary to litigation about their respective rights. For instance, it may compel the issuing of a certificate of election; but this will still leave the right to hold the office open to contest by *quo warranto*. When directed against a judicial tribunal, the writ does not indicate in any way what judgment is to be rendered, or what rights of the litigants, respectively, are to be upheld or denied. It simply directs that the court proceed to perform its functions — leaving the manner of performance to the judicial discernment, and to the corrective authority of superior tribunals. The writ was devised and extended to prevent disorder from a failure of justice, and defect of police. 3 Burr. 1265. In *The People* v. *Steele*, Edm. Sel. Cas. 564, Judge Edmonds says, with reference to the statutory requirement that the writ be granted without delay: "This is by no means an accident in the statute; it is a wise and necessary provision, and is utterly at war with the claim asserted on the part of the defendants," to wit, that a writ of error upon the award of *mandamus* may supersede the issuing of the writ. The general rule, that no *supersedeas* can be recognized upon the award of a peremptory *mandamus*, is maintained in the following cases: *Pinckney* v. *Henngan*, 2 Strobh. 250; *Rex* v. *Dean*, 1 Stra. 536; *Strode* v. *Palmer*, Lil. Mod. Ent. 248; *The People* v. *Steele*, Edm. Sel. Cas. 505; *Dean* v. *Dowgatt*, 1 P. Wms. 348. We find no authoritative decision to the contrary.

In Missouri, the appeal in common-law cases has, comparatively speaking, but little in common with the ancient appeal in chancery and under the civil law. It follows closely, in procedure and results, the common law or statutory writ of error. Errors must be assigned in due form, and the appellate review is confined chiefly to questions of

law decided by the inferior court. So far, therefore, as any argument may be drawn from analogy, the proper tests are not to be found in the learning concerning appeals, in the old books, but are more rationally derived from what relates to proceedings in error. By these tests, as is already shown, no *supersedeas*, on general principles, can follow an appeal to the Supreme Court in the present case. If anything can delay the issuing of the peremptory *mandamus*, the authority must be found in section 3713 of the Revised Statutes. "Upon the appeal being made, the court from which an appeal is prayed shall make an order allowing the appeal; and such allowance thereof shall stay the execution in the following cases, and no others: * * * Second, when the appellant, or some responsible person for him, together with two sufficient securities, to be approved by the court, shall, during the term at which the judgment appealed from was rendered, enter into a recognizance to the adverse party in a penalty double the amount of whatever debt, damages, and costs, or damages and costs, have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages that may be recovered in any appellate court upon the appeal, conditioned," etc. In order to apply this provision to the present case, it must first be settled that a peremptory writ of *mandamus* is an execution upon a judgment within the meaning of the statute. By sections 2335 and 2336 of the Revised Statutes, it is provided that, "The party in whose favor any judgment, order, or decree is rendered, may have an execution in conformity therewith. Such execution shall be a *fieri facias* against the goods, chattels, and real estate of the party against whom the judgment, order, or decree is rendered." Upon a comparison of this definition with the limitation of a stay to cases wherein the "debt, damages, and costs, or the damages and costs," are first secured to the adverse party, it is impossible to conceive that the Legislature intended to bring the writ of *mandamus* within the

operation of the provisions. According to the authorities, also, there is neither judgment nor execution in the case. In *The People* v. *Steele*, Edm. Sel. Cas. 505, it is said: "The denial or grant of a *mandamus* is a mere award of the court, not a strict and formal judgment. 3 Bro. P. C. 178." In 2 Saunders's Reports, 101, note *a*, it is said: "A writ of error would not lie at common law to review the decision or judgments of the Court of Queen's Bench or courts of the counties palatine, in respect to writs of *mandamus*, and the proceedings thereon. * * * And the reason given is, that regularly no writ of error doth lie, unless there be a judgment or an award in the nature of a judgment." In the case of the *Dean and Chapter*, 8 Mod. 28, the writ of error was quashed, and, among the reasons given, the Court of King's Bench said that " the right of any person was not determined on a *mandamus*. It gives a remedy where there is a seeming probability for it, and it settles people in their possessions, so that they may be able to defend their rights, or, by virtue thereof, to bring an action for things incident to the possession; and if a writ of error would lie in such a case, it would entangle all the public acts of annual officers in most corporations and parishes."

In the present award of a peremptory *mandamus*, this court does not determine any right in controversy, of either party in the litigation before the Circuit Court. We may well suppose that the learned judge, in obeying the writ, will enter a judgment in favor of the plaintiff for the sum of $3,500, in accordance with the verdict of the jury. But if he does so, the act will proceed from his own understanding and interpretation of what the law demands, if a judgment is to be entered at all. Should he render a different judgment, this would be no violation of the *mandamus*, but would be corrected only on error or appeal. We do not direct an entry of judgment for $3,500, or for any other sum. Consequently neither that sum, nor any other, is the subject of our award. The recognizance, then, in double

that sum, which the respondent tenders, bears no relation to any judgment or determination recorded by this court ; and especially to none against the respondent himself, who takes the appeal. When it is considered that the judge, in whose name the stay must be asked for, has no interest whatever in delay, and that the only party who proposes to profit by it is not a party to this proceeding at all, the absurdity of the demand becomes striking. It asks, in effect, that an appeal in one case shall operate a stay of execution in a different case, and in favor of one who is not a party in the proceeding appealed from.

We do not perceive that, even indirectly, the party against whom the Circuit Court judgment may be rendered will be affected with any hardship, on account of a refusal to stay the peremptory writ. If he shall deem the judgment wrong, his complete remedy lies before him, in an appeal, with stay of execution under the statute, which will fit his case far better than it does the one now under consideration. On the other hand, if the peremptory writ should be stayed, the adverse party would be deprived of his judgment, with all its liens and benefits, until the ultimate determination of the *mandamus* case. The recognizance given here would add no security to that judgment, when obtained ; and, in the meantime, a change of circumstances and conditions might find it worthless at last.

Our conclusion is that the peremptory writ should issue, notwithstanding the approved recognizance tendered, while the respondent is, nevertheless, entitled to his appeal to the Supreme Court. The proper orders will be entered accordingly. All the judges concur.