## THE STATE *ex rel.* THE LACLEDE BANK v. LEWIS.

1. **Mandamus:** APPEAL: SUPERSEDEAS. An appeal, with the statutory bond, from a judgment awarding a peremptory *mandamus,* operates as a *supersedeas.*

2. ———: "PROCEEDINGS:" "EXECUTION." The term "execution" in section 3713, Revised Statutes, and the term "proceedings" in sections 3717, 3718, are used interchangeably and include a peremptory writ of *mandamus.*

3. **The Origin, History and Nature** of the writ of *mandamus* reviewed.

4. **A Writ of Prohibition** issued to the court of appeals to restrain an act beyond its jurisdiction.

*Prohibition.*

PEREMPTORY WRIT AWARDED.

Application for a writ of prohibition at the relation of the Laclede Bank to restrain Hons. Edward A. Lewis, Robert A. Bakewell and Seymour D. Thompson, judges of the St. Louis court of appeals, Joseph F. Baier, clerk of said court, and the St. Louis court of appeals, from issuing or causing to be issued any peremptory writ of *mandamus.*

*Noble & Orrick* for relator.

The petition for a prohibition may be made by a party or a stranger to the record. Green & Meyer Mo. Prac., p. 456, § 1194; High on Extr. Rem., § 779; *Trainer v. Porter,* 45 Mo. 340; *State v. Clark Co.,* 41 Mo. 49; *Thomas v. Mead,* 36 Mo. 232; *Howard v. Pierce,* 38 Mo. 296; *Washburn v. Phillips,* 2 Metc. 296; *Ex parte Smith,* 23 Ala. 94. The Laclede Bank is the real party in interest. Relator is remediless except through a writ of prohibition. Where an inferior court has no jurisdiction, or exceeds its juris-

diction, prohibition lies. *Thomas v. Mead*, 36 Mo. 245; *State v. Clark Co.*, 41 Mo. 44; *Vitt v. Owens*, 42 Mo. 512; High Extr. Rem., § 789. An appeal lies to the Supreme Court from the judgment of the court of appeals on the demurrer to the return to the alternative writ of *mandamus*, and such appeal, with bond as required by statute, operates a stay of all further proceedings. *Ex parte Skaggs*, 19 Mo. 339; *Lewis v. Price*, 11 Mo. 398; *State ex rel. v. Sutterfield*, 54 Mo. 395; *In re Bowman*, on first application for re-instatement as attorney—decision of this court not reported. Also in the matter of *Mo. State Lottery ; City of Memphis v. Brown*, 94 U. S. 715 ; *Levy v. Goldberg*, 40 Wis. 311 ; *State ex rel. v. Judges*, 7 Iowa 203. After the appeal to this court was perfected, the court of appeals lost all control and jurisdiction of the *mandamus* proceeding, and the case must be regarded as one pending in this court to which the appeal was taken. *Foster v. Rucker*, 26 Mo. 494. Relator has no adequate remedy against the action of the court of appeals in ordering the issuance of the peremptory writ of *mandamus*, notwithstanding the appeal, except through a writ of prohibition. The appeal from the judgment of the circuit court in the case of *Albers v. The Laclede Bank*, will not be an adequate remedy. *Lockwood v. Ins. Co.*, 47 Mo. 50; *Rennick v. Walton*, 7 Mo. 292; *Glasgow v. Moore*, 9 Mo. 834.

*Marshall & Barclay* for respondents.

1. The act sought to be prohibited, viz : the issue of process to enforce an order already entered, is a ministerial act, and prohibition will not lie to restrain its performance. Prohibition only lies to forbid judicial acts. *State v. Clark Co.*, 41 Mo. 44; *Hockaday v. Newsom*, 48 Mo. 196; *Vitt v. Owens*, 42 Mo. 512; *Casby v. Thompson*, 42 Mo. 133 ; *Thompson v. Tracy*, 60 N. Y. 31. Even where courts act in a ministerial capacity, such acts cannot be the subject of prohibition. *Hockaday v. Newsom*, 48 Mo. 196; *State v.*

*Clark Co. Ct.*, 41 Mo. 44. The issue of execution (or any other writ or process to enforce a judgment of court) is a mere ministerial act. It may hence be (in a proper state of facts) the subject of *mandamus*, but never of prohibition. To award a writ is a judicial act; to issue it is ministerial. Freem. on Ex., (1876) § 23; *Kyle v. Evans*, 3 Ala. 481; *Wilburn v. Hall*, 17 Mo. 471; *Regina v. Clerk*, 12 Eng. Law & Eq. 428; *Moore v. Muse*, 47 Texas 210; *People v. Loucks*, 28 Cal. 68; *Laird v. Abrahams*, 15 N. J. L. 22; *People v. Gale*, 22 Barb. 502; *Ex parte Braudlacht*, 2 Hill. 367; *State v. Clark Co.*, 41 Mo. 44; *People v. Clerk Marine Ct.*, 3 Abb. App. Dec. 492.

2. The statute of Anne from which our statute concerning *mandamus* is copied, requires the issuance of a peremptory writ of *mandamus* "without delay." The English courts early settled the meaning of this phrase by deciding that a *supersedeas* would not lie upon a judgment for a peremptory writ of *mandamus*. *Dean v. Dowgatt*, 1 P. Wms. 351. The same construction was given to this section of the statute of Anne, at an early date in New York, and has never been changed. *People ex rel. Griffen v. Steele*, 1 Edmonds' Select Cases 574. The great value of this case as authority may be estimated from the fact that it was reported by no less than four several reporters of that state, namely: 2 Barb. 554; 1 Code Reports 88; 6 N. Y. Legal Observer 212, and 1 Edmonds' Select Cases 574; and has never been even questioned in that state since it was rendered. The same rule has been laid down elsewhere. *Pinckney v. Henegan*, 2 Strobh. (S. C. L.) 250; *People v. Willis*, 5 Abb. Pr. 205. And is announced by the only text writer on the subject. High on Extr. Rem., § 557. *Mandamus* is a remedy which would be utterly defeated if an appeal would operate a *supersedeas*. It lies to control the doing of a multitude of acts, the omission of which during the pendency of an appeal would render the writ, when finally obtained, worthless. Accordingly, this court has decided in several instances that *mandamus* is a

special and extraordinary proceeding, and not governed by the general provisions of the practice act. *State v. Burkhardt*, 59 Mo. 75 ; *Smith v. St. Francois Co. Ct.*, 19 Mo. 433 ; *Chinn v. Trustees*, 32 Ohio St. 236 ; *State v. Trustees*, 61 Mo. 155, and *State v. Holladay*, 65 Mo. 76, (overruling *Railroad Co. v. County Ct.*, 53 Mo. 156,) where a contrary rule was intimated. The practice by its very terms does not apply to *mandamus* proceedings. R. S., §§ 3510, 3585.

3. Appeal was not a part of common law procedure; it is purely statutory and cannot be extended beyond the express terms of the statute allowing it. *State v. Clinton*, 67 Mo. 380; *Railroad Co. v. Commonwealth*, 39 Pa. St. 403 ; *The Roanoke*, 3 Blatchf. 390 ; *Howe v. State*, 9 Mo. 682 ; *Robinson v. Walker*, 45 Mo. 117 ; *Ferguson v. Ferguson*, 36 Mo. 197 ; *Lengle v. Smith*, 48 Mo. 276. The statute concerning appeals refers only to staying " execution," and the terms of the bond show that only pecuniary judgments are meant, for the bond is to be conditioned " in double the amount of whatever debt, damages and costs, etc., have been recovered by such judgment." R. S., § 3713. The allowance of an appeal, (where bond has been given, as in the case at bar,) of itself operates a stay of execution, but not a stay of the peremptory writ of *mandamus*, which is no execution,. but an extraordinary writ of a very different character. R. S., § 2336; *Chinn v. Trustees*, 32 Ohio St. 236 ; *Mansfield v. Fuller*, 50 Mo. 338. This argument is strongly sustained by the express provisions of our statutes for the stay of execution in several special proceedings, which provisions would be unnecessary if the general law of appeals were capable of the construction which the relator here insists upon. *Ut res magis valeat, quam pereat.* Replevin, R. S., § 3866 : Mortgages, R. S., § 3307 ; Ejectment, R. S., §§ 2256, 2258; Dower, § 2233. Hence, by the very terms of the general statutes, an appeal with bond cannot be held to stay anything but the execution proper, and this view has been sustained in many analagous cases involving the same principle. *Whitney v. Mowry*, 3 Fish.

Pat. Cas. 175; *Merced Min. Co. v. Fremont*, 7 Cal. 130; *State ex rel. v. Chase*, 41 Ind. 356; *Hart v. Mayor of Albany*, 3 Paige 381.

RAY. J.—This is a petition at the relation of the Laclede Bank, for a prohibition against the St. Louis court of appeals to prohibit said court from issuing its peremptory *mandamus* against W. H. Horner, judge of the St. Louis circuit court, compelling him, as such judge, to enter judgment upon a verdict rendered in a certain cause pending before him, wherein C. H. Albers and others are plaintiffs, and the banking house of Bartholow, Lewis & Co.— now the Laclede Bank—and the relator in this petition, is defendant, notwithstanding the fact that said judge, on the motion of the defendant, had, in effect, by its conditional order, set aside said verdict, and granted a new trial in said cause.

The *"mandamus* proceeding" out of which this application has grown, is entitled *"State of Missouri ex rel. C. H. Albers et al. v. W. H. Horner*, Judge, respondent," and is reported in 10 Mo. App. 307, 315. It appears from that case, as well as from the petition and the accompanying transcript, that a prior verdict in said cause had been set aside, and a former new trial granted on the motion of the same defendant, and that said *mandamus* was awarded by said court of appeals on the relation of said Albers and others, upon the ground that said second new trial was an act beyond the power of said circuit court, and in violation of the provisions of section 3705 of the Revision of 1879, which declares that, "Only one new trial shall be allowed to either party, except, 1st, When the triers of the fact shall have erred in a matter of law; 2nd, When the jury shall be guilty of misbehavior."

The ground of this application is, that said court of appeals, in violation of the provisions of section 3713 of the Revision of 1879, is about to issue its peremptory *mandamus* against said circuit court, notwithstanding the fact

that the judge thereof had appealed from its final judgment awarding said *mandamus*, and given the bond required by said section for the purpose of staying said proceedings until said appeal could be heard in this court. The petition alleges that, by force of said statute, the granting of said appeal and the approval of said bond operate a *supersedeas* and stay all further proceedings in the matter pending said appeal; that said court of appeals thereafter had no further jurisdiction of said cause, and no power to order said *mandamus*, and that its subsequent action to that effect would be an act against the constitution and laws of the State, clearly beyond its authority, as well as prejudicial to the interest of the relator—who is the defendant in said verdict and in said contemplated judgment, so about to be coerced, and who has no other adequate remedy in the premises. On the other hand, it is claimed for the respondent, that the " peremptory writ of *mandamus* " is not an " execution upon a judgment," within the meaning of section 3713 of our statute ; that, by reason of the peculiar nature and purpose of said writ, its operation is not stayed by appeal or writ of error, with the statutory bond as in other cases ; that such a rule would be repugnant to its very nature, destructive of its efficacy, and violate the statutory command that " a peremptory writ of *mandamus* shall be granted without delay, for him, for whom judgment shall be given."

From this statement it will be readily seen that the only question for our consideration upon this application is the construction of section 3713 of our statute concerning appeals and the stay of execution thereunder; or, in other words, whether there is anything, either in the language of the statute itself or in the nature and purpose of the peremptory writ of *mandamus*, as now regulated and administered in the judicial system of this country, which exempts it from the operation of *supersedeas*, incident to all other forms of process, upon all other judgments, in

case of appeal or writ of error, with the statutory bond in question.

It may be remarked in the first place, that in this proceeding no question can arise as to the propriety of the ruling of the circuit court on the motion for a new trial; or that of the court of appeals in awarding said *mandamus*, as it is a fundamental principle that the writ of prohibition is never allowed to usurp the functions of an appeal, writ of error or *certiorari*. High on Extr. Leg. Rem., §§ 771, 772.

The only question now before us is the power of the court of appeals to order the *mandamus*, notwithstanding the appeal and approval of the bond in question. If the plain language of the statute is to control, it seems to us that the court of appeals, after the granting of said appeal, and the approval of said bond, had no further jurisdiction of the cause, and no power whatever to order the issuance of said writ. Section 3713 provides that, "upon appeal being made, the court from which an appeal is prayed, shall make an order allowing the appeal, and such allowance thereof, shall stay the execution in the following cases and no other: * * 2nd, When the appellant, or some responsible person for him, together with two sufficient securities, to be approved by the court, shall, during the term at which the judgment appealed from was rendered, enter into a recognizance to the adverse party, in a penalty double the amount of whatever debt, damages and costs, or damages and costs, have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages that may be recovered in any appellate court, upon the appeal, conditioned, that the appellant will prosecute his appeal with due diligence to a decision, in the appellate court, and shall perform such judgment as may be given by such court, or such as the said court may direct the circuit court or St. Louis court of appeals to give, and if the judgment of such court, or any part thereof, be affirmed, that he will comply with and

perform the same, so far as it may be affirmed, and will pay all damages and costs which may be awarded against the appellant by any appellate court." By section 3714: "Any judge of the Supreme Court, or St. Louis court of appeals, respectively, in cases appealable to said courts, upon inspection of a copy of the record, may grant an appeal, by special order for that purpose, at any time within one year next after the rendition of the final judgment or decision in the cause." Section 3713, among other things, provides that, " an appeal granted by the Supreme Court, or St. Louis court of appeals, or any judge thereof, * * shall not operate as a stay of proceedings unless a like recognizance, as in case of other appeals in civil cases, be entered into before the Supreme Court, St. Louis court of appeals, or a judge or clerk thereof, and filed in the office of the clerk of the circuit court in which the judgment appealed from was rendered." Section 3718, declares, that, "on filing such recognizance, there shall be a stay of all further proceedings upon the judgment appealed from, except that perishable property may be sold if the circuit court or judge thereof shall deem the same necessary and proper, and not injurious to the appellant, and if sold, the proceeds thereof shall be retained subject to the order of the court." Section 3710 provides that "every person aggrieved by any final judgment or decision of any circuit court, in any civil action, or by any such judgment or decision of the St. Louis court of appeals from which an appeal is not prohibited by the constitution, may make his appeal to the court having appellate jurisdiction of such judgment or decision." Section 3712, prescribes the conditions as to time, and affidavit, upon which appeals may be taken and allowed. Subject to these conditions, and the limitation contained in section 3710, appeals, by the express words of the statute (§ 3710), are allowable, from any final judgment or decision of said courts, in any civil cause, whatever that judgment or decision may be. This proposition is not denied. Indeed,

the right of the respondent, in the *mandamus* proceeding in question, is expressly conceded. *State v. Horner*, 10 Mo. App. 315; *Ex parte Skaggs*, 19 Mo. 339; Mo. Const., art. 6, § 12.

But it is insisted that a peremptory writ of *mandamus* is not an " execution " upon a judgment, within the meaning of the statute, (§ 3713,) and in support of this proposition, reference is had to the penalty of the recognizance provided for in section 3713; and also to the definition of the term " execution " as found in sections 2335, 2336, regulating that form of process known as a *fieri facias*. 10 Mo. App. 378.

From a careful examination of the several·provisions of the statutes, we think it quite clear that the term " execution," in section 3713, and the term " proceedings," in sections 3717, 3718, are used interchangeably, and mean one and the same thing, and that is, that the execution or performance of the judgment or decision appealed from, whatever it may be, is stayed by the allowance of said appeal, and the approval of said recognizance in the penalty and conditioned, as required by section 3713. In other words, the process appropriate and necessary for carrying into effect the judgment or decision appealed from, whatever it may be, is superseded by the appeal and recognizance in question.

The form and nature of that process, necessarily depends upon the form and nature of the judgment or decision appealed from. In any event, whatever may be its form, name or purpose, it is equally stayed by force of the statute in question. In this construction we are supported, if support be necessary, by the condition of the recognizance itself, the language of which is, " that the appellant will prosecute his appeal with due diligence to a decision in the appellate court, and shall perform such judgment as shall be given by such court, or such as said court may direct the circuit court, or the St. Louis court of appeals, to give, and if the judgment of such court, or any part

thereof, be affirmed, that he will comply with and perform the same, so far as it may be affirmed." This language of the recognizance, we think, clearly interprets the sense in which the term "execution" is used in the statute before us. It plainly and manifestly is not limited to a *ficri facias* only, but extends to and includes the performance or exe-. cution of whatever judgment the appellate court may give, or direct to be given, and if the original judgment be affirmed, to a compliance with and performance of the same, whatever it may be or require.

Such, we think, is the plain import of the language of the statute. In this language we fail to discover anything favoring the exemption of the writ of *mandamus* from the operation of the rule incident to all other forms of process adapted and designed to carry out and execute the final judgments and decrees of all courts, from whose decisions appeals are allowed, with the statutory bond in question.

Neither have we been able to find anything in the nature, offices or purposes of the writ itself, as now used and regulated in the judicial system of this country, to justify the exemption claimed.

In England it is true, that *mandamus* was originally a mere mandate issuing directly from the Sovereign to the subject, to compel the performance of the royal will. In its origin, also, it was in no sense a judicial writ, but a royal mandate, used by the King in superintending the police and in preserving the peace of the realm; and as such it brooked no question. In process of time, however, and in the progress of the continental struggle between the parliament and Crown aided by some legislative amendments, the arbitrary use of this royal mandate, of mere police regulation, fell into disuse, and gave place to the judicial writ of *mandamus*, by which the court of King's Bench, at an early day, assumed the right to correct and remedy official inaction, and set in motion inferior courts, tribunals and officers. The modern writ of *mandamus* is

defined by a modern text writer, of acknowledged ability, to be "a command, issuing from a common law court of competent jurisdiction, in the name of the State or Sovereign, directed to some corporation, officer or inferior court, requiring the performance of a particular duty, therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law." High's Extr. Leg. Rem., p. 4.

The extraordinary aid of a *mandamus* may be invoked either for the purpose of enforcing or protecting a private right, unconnected with the public interest, or for a purely public right, where the people at large are the real party in interest. In modern practice, however, it is more frequently called into requisition for the former purpose than the latter. In this connection, High, in his treatise on *mandamus*, section 430, uses this language: "The remedy by *mandamus*, as discussed and illustrated in the preceding chapters, has been shown to be substantially a civil remedy in its nature, and one which is applied for the protection of purely civil rights. The proceedings, however, are usually instituted in the name of the State or Sovereign, upon the relation or information of the party aggrieved."

It is difficult to perceive any satisfactory reason why the proceedings should not be conducted, as in ordinary civil actions for the protection of private rights, merely in the name of the actual parties in interest, as plaintiff and defendant, as is done in some of the states, without introducing the State or Sovereign power as prosecutor. This method, however, of instituting the proceedings is of very ancient origin, and seems to have had its foundation in the theory which formerly prevailed, regarding the writ of *mandamus* as purely a prerogative writ, issuable, not of right, but only at the pleasure of the Sovereign, and hence, issued only in his own name, and as an attribute of his Sovereignty. And while the tendency of the courts in modern times is to disregard the prerogative theory of the writ, and to treat it as an ordinary writ of right, issuable

as of course, upon proper cause shown, many of the courts, still adhere to the former theory, so far at least as to consider the proceedings properly instituted only in the name of the state.   *   *   The tendency of the courts, however, is to regard the use of the name of the Sovereign power, as prosecutor, to be merely nominal, the remedy being regarded as essentially a civil remedy.   In other words, it is now regarded as in the nature of an action by the person in whose favor the writ is granted, for the enforcement of a right in cases where the law affords him no other adequate means of redress.   Whilst this is so, it may be remarked, however, that in England, long after the process had thus become an acknowledged judicial writ, it nevertheless continued to be considered and treated, in some sense, as a prerogative writ.   In the earlier English cases it is uniformly referred to as such.   Even Blackstone, in his day, terms it " a high prerogative writ, of a most extensive remedial character, and one of the flowers of the King's Bench."   At an early day, in this country, also, a few instances are found where courts speak of it in somewhat similar terms.   In this connection, High, in his treatise, section 3, page 6, uses this further language: "In this country, however, a mandamus cannot, in any strict, sense, be termed a prerogative writ, and much confusion of ideas has resulted from the efforts of many of the courts to attach prerogative features to the remedy, as used in the United States.   This confusion has resulted chiefly from a failure to properly discriminate between the English and American systems.   Under the English constitution, the King is the fountain and source of justice.   In the United States, from the nature of our system of government, the writ has necessarily been stripped of its prerogative features."

From this review it would seem a little strange if the current of American authorities should be found to warrant the idea that there was still something in the nature and purposes of the writ of *mandamus* to exempt it from

the operation of the rule applicable to all other process, upon all other final judgments and decrees. More especially are we of this opinion, when we consider the great variety and importance of cases, rights and interests, which are daily adjudicated and settled by proceedings in *mandamus*, in the numerous courts of the country. Such, we are persuaded, is not the fact. It is true, as appears from the elaborate opinion of the court of appeals, that in some two or three of the states, including South Carolina, New York and perhaps New Jersey, a solitary case may be found, in each of them, where the exemption claimed for *mandamus* is directly decided and approved. These cases, however, are based chiefly, if not exclusively, upon the authority of the early English cases cited by the court of appeals.

The able judge who delivered the opinion of the court of appeals, after treating at length of the origin, nature and purpose of the peremptory writ of *mandamus*, by way of summary concludes his remarks on this point in the following language : "The general rule that no *supersedeas* can be recognized upon the award of a peremptory *mandamus*, is maintained in the following cases : *Pinckney v. Henegan*, 2 Strobh. 250 ; *Rex v. Dean*, 1 Stra. 536 ; *Strode v. Palmer*, Lil. Mod. Ent. 248 ; *People v. Steele*, 1 Edm. Sec. Cas. 505 ; *Dean v. Dowgatt*, 1 P. Wms. 348. We find no authoritative decisions to the contrary." Our attention has been called to a number of American cases of the highest respectability, where the contrary doctrine has been expressly decided. These cases possibly may have escaped the learned judge, but in any event we deem them quite as authoritative as any of the cases cited in said opinion. In the case of the *State ex rel. Rice v. County Judges*, 7 Clark 187, the Iowa court, under a statute similar to ours, and where the point was expressly made, holds the doctrine that "after judgment ordering a peremptory writ of *mandamus*, an appeal, with a bond as provided by law, will stay the proceedings as in other cases." In the case of *Mem-*

*phis v. Brown,* 94 U. S. 715, where there was a final judg-
ment awarding a peremptory *mandamus,* it was held by
the Supreme court of the United States, that a writ of
error, with the required bond, was a *supersedeas.* In the
case of *United States v. Columbian Ins. Co.,* 2 Cranch C. C.
266, it was decided that, "A writ of error, to the judgment
of the circuit court of the District of Columbia, awarding
a peremptory *mandamus* is a *supersedeas,* and if the per-
emptory *mandamus* be issued, after the filing of the writ
of error, and within ten days after the rendition of the
judgment, it will be quashed." This case involved the
construction of a Virginia statute similar to ours, as well
as an elaborate review of all the English authorities cited
and relied on in 10 Mo. App., *supra.* In the case of the
*People ex rel. Thomas v. The Commissioners of Highways of
Milton,* 25 How. Pr. 257, the supreme court of New York
also decided that "when an appeal to the court of appeals
has been brought by the defendant from a judgment award-
ing a peremptory writ of *mandamus,* the perfecting of ap-
peal by complying with section 334 of the Code, stays all
further proceedings in the court below." There is also the
English case of *Reeding v. Newell,* 2 Strange 983, which is
subsequent to the English authorities cited in 10 Mo. App.,
*supra,* where it is held in a *mandamus* case that error was
a *supersedeas* to a peremptory *mandamus.* In addition to
all this, our own court, in the case of *State ex rel. v. Co. Ct.
of Bates Co.,* 57 Mo. 72, expressly recognizes the doctrine
that an appeal, with the statutory bond, from a judgment
awarding a peremptory *mandamus* operates as a *supersedeas.*
It is true, that there was no argument on this point, but
the court assume, without question, that such is the law.
We think the court was right. In the case of *Hudson v.
Smith,* 9 Wis. 122, the court declares that "it is the gen-
eral policy of the law to allow a party against whom ju-
dicial proceedings are commenced, to stay proceedings
under the decision of an inferior tribunal against him, from
which he has appealed, on giving just and adequate secur-

ity," and that "in the absence of positive provisions of the statute to the contrary, an appeal perfected as the law requires, does, *proprio vigore*, stay proceedings under the order appealed from." There is absolutely, scarcely any limit to the number of authorities in all the states where this general doctrine is not held and approved, as an unquestioned maxim of the law.

In view, therefore, of the premises, we feel constrained to hold, both on principle and authority, as well as the plain letter of the statute, that the court of appeals, after granting said appeal and approving said bond, had no power to order the issuance of the peremptory *mandamus* awarded.

The prohibition asked for must, therefore, be ordered, and go accordingly. All concur.