THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY,
*Plaintiff in Error*, v. THE EVANS & HOWARD
FIRE BRICK COMPANY *et al.* *

1. **Condemnation Proceedings: PRACTICE: EXCEPTIONS: TAKING POSSESSION OF LAND : PAYMENT OF MONEY INTO COURT : STRIKING OUT EXCEPTIONS : ORDERING MONEY PAID TO OWNER : APPEAL : SUPERSEDEAS : PARTY AGGRIEVED : DISMISSAL OF APPEAL.** A railroad company has a right, under the statute, to condemn land, and when the report of the commissioner comes in, and the damages assessed are deemed excessive, to pay the amount assessed to the clerk, to take possession of the land desired in order to construct its road, to file exceptions, to have them heard, and pending the hearing of exceptions to have the money retained by the clerk; and if the court should strike out the exceptions, and order the assessment money paid to the land owner, such order will be a final one, from which the company can appeal with *supersedeas*, as an incident, just as in other civil causes, and the company, in such circumstances, is to be deemed "aggrieved" within the meaning of section 3710, Revised Statutes.

2. **Constitutions, HOW TO BE CONSTRUED.** Constitutions are instruments of a practical nature, to be construed, with the help of common sense, so as to carry out the intention of the framers and adopters of the instrument, and it must be assumed as a basis for the construction of the constitution that an intelligent purpose prompted those who were connected with its making or adoption, and that those thus engaged were familiar with all the vicissitudes of condemnation proceedings, and the statutes and decisions relating thereto, and purposely framed section 21, of article 2, of the constitution, so as to meet the exigencies of filing exceptions, taking possession of land, payment of money into court, appeals, *supersedeas,* etc.

3. **Statutes: CONSTRUCTION OF: PRESUMED TO BE CONSTITUTIONAL.** There is no necessary repugnancy between the statute of 1879, relating to condemnation of land, and section 21, article 2, of the constitution.

4. **Statute, REVISION OF, AFTER ADOPTION OF CONSTITUTION : PRESUMPTION ARISING THEREFROM : LEGISLATIVE CONSTRUCTION OF : CONFORMITY OF STATUTE TO CONSTITUTION : WEIGHT OF.** Where, as in this instance, the legislature has revised a statute after a constitu-

---

* This case was argued and submitted in connection with the next succeeding one.

tion has been adopted, such a revision is to be regarded, *pro hac vice*, as a new enactment, and as a legislative construction that the statute so revised, conforms to the constitution: and the courts should give some weight to, and rely with some degree of confidence on such legislative construction.

5. Construction of SECTION 21, ARTICLE 2, OF CONSTITUTION. Section 21, article 2, of the constitution, is complied with, both in letter and the ordinary import of its terms, when the money is "paid into court," notwithstanding that exceptions are filed and possession taken of the land. That section of the constitution only guarantees to the land owner "just compensation " and no more, and was never intended to countenance arbitrary assessments and exorbitant exactions.

6. Compensation, MANNER OF ASCERTAINING. The constitution has left entirely to the legislature the manner whereby the jury or commissioners are to ascertain the *quantum* of compensation, and that manner or method may well include all necessary details of motions, exceptions, the appointment of new commissioners, or another jury, "as right and justice may require." All means necessary to the end to be accomplished, not inconsistent with the constitution, belong in this regard to the legislature.

7. No Estoppel in Consequence of Complying with Unconstitutional Statute. Where a railroad corporation, relying on the presumption that a statute is constitutional, pays money into court, files exceptions, and takes possession of land, such acts are to be taken as a *whole* and not by *piecemeal*, not valid in part and void in part, and if the statute turns out to be unconstitutional, no estoppel will arise against such corporation in consequence of complying with the statutory terms.

## *Error to St. Louis Court of Appeals.*

REVERSED.

*Noble & Orrick* and *John O'Day* for plaintiff in error in this case, and for respondents in the next succeeding case.

(1) Mandamus is not the proper remedy to correct an error, if error there was in this cause. The court below acted judicially in all matters pending before it, and it is not in the power of this court to review that action by mandamus. *Railroad v. Lackland*, 25 Mo. 527; High on Extraordinary Remedies, secs. 156, 176,

177. Even when the court below refuses to act on the ground of the unconstitutionality of a statute, and when the superior court decides the law to be constitutional. *Smith v. Judges*, 17 Cal. 547. (*a*) The question of right of appeal can be determined on the appeal, and mandamus will not be granted. *Blecker v. St. Louis Law Com'rs*, 30 Mo. 112; *Gale v. Richie*, 47 Mo. 326; *State v. Lewis*, 76 Mo. 370; *Ex parte Ry. Co.*, 60 N. Y. 112; *Boller v. Voorhiss*, 20 N. Y. 525. (*b*) The appeal existing, a supersedeas is granted by law. R. S., 1879, secs. 3713, 3717, 3718; *State ex rel. v. Lewis*, 76 Mo. 370. (*c*) The supersedeas order was *judicial action* and the jurisdiction to make it will be examined only on appeal. High on Extraordinary Remedies, secs. 156, 176, 177; *Strong v. Jay*, 2 El. and Bl. 739; *Vandever v. Conover*, 1 How. (N. J.) 271; *Postmaster v. Trigg*, 11 Peters 173; *People v. Weston*, 28 Cal. 639; *People v. Judges*, 4 Nev. 119; *Dunklin Co. v. Dunklin Co. Court*, 23 Mo. 449. Mandamus does not lie to vacate order. *People v. Judges of Oneida Co.*, 21 Wend. 20. Nor to change venue. *State v. Washburne*, 32 Wis. 99; 2 Cowen 458. The discretion of staying proceedings will not be controlled by mandamus. *Louisiana v. Judges*, 15 La. 521; *People v. Superior Court*, 19 Wend. 701; *Elbert v. Judges, etc.*, 3 Cow. 59. (*d*) The clerk is not amenable to mandamus when the court has made the order. *State v. Engleman*, 45 Mo. 27. (*e*) And the court is not amenable to mandamus when it has already acted. High on Mandamus, *supra*. (2) On the merits shown on the record the writ should not be granted, because on the record the court below had jurisdiction and decided rightly. (*a*) The statute gives the railway company the right to except to the reports of the commissioners, and to a hearing on its exceptions, and if these exceptions are overruled, and a final order of payment is made, an appeal lies as in ordinary cases, with a supersedeas, if asked, as provided for under the statutes. *State ex rel. v. Lewis*, 76 Mo. 370; R. S., 1879, secs. 894, 896,

as to report and exceptions; secs. 3710, 3712, 3713, 3717, 3718, as to appeals and supersedeas; *Railroad v. Lackland*, 25 Mo. 527; *Hudson v. Smith*, 9 Wis. 122; *Lee v. Railroad*, 53 Mo. 178; *Railroad v. Schaubacher*, 49 Mo. 555; *Mississippi River, etc., Co. v. Ring*, 57 Mo. 491. (*b*) If the payment of the money into court is made during the progress of the hearing of the exceptions, it does not belong immediately to the owner of the land if the railway company does not occupy the land, and the proceedings on final decision by appeal and supersedeas would be as before. (*c*) The statute authorizes payment into court as a deposit, filing of exceptions, and, pending the exceptions, gives the right to the company to build the road, authorizing its temporary occupation for this purpose, the fund to remain in court. R. S. 1879, sec. 896; *State v. Dickson*, 3 Mo. App. 467; *Mississippi, etc., Co. v. Ring*, 57 Mo. 491. (3) The statute under this construction is constitutional. Const. of Mo., 1875, art. 2, sec. 21; R. S., secs. 894, 896; 1 R. S. 1855, 419; Const. of Mo. 1820, art. 13, sec. 7; Const. of 1865, art. 1, sec. 16; 1 Wag. Stat., 328; *Walther v. Warner*, 35 Mo. 277; *Peterson v. Ferreby*, 30 Iowa 337; *Bloodgood v. Railroad*, 18 Wend. 9; *Baker v. Johnson*, 2 Hill 342; *Smith v. Helmer*, 7 Barb. 416; *Rubottom v. McClure*, 4 Blackf. 505; *Pittsburg v. Scott*, 1 Pa. St. 309; *Cushman v. Smith*, 34 Me. 247; *Miss., etc., Co. v. Ring*, 57 Mo. 496; *Bradshaw v. Johnson*, 20 Johns. 103; *People v. Hagden*, 6 Hill 359. As to compensation to be provided, see Pierce on Railroads, 161, 163, as to time when compensation must be made, the distinction between "taking" and "occupation," p. 171. The *title* must *vest* before the proceedings are ended, or beyond the control of the legislature. *Blackshaw v. Co.*, 13 Kansas 514; *C. B., etc., Co. v. A. T. etc., Co.*, 28 Kansas 454; *N. Y., etc., Co.*, 60 N. Y. 120; *Stacy v. R. R. Co.*, 27 Vermont 39; *Mereno v. Co.*, 11 C. E. Green, 464. The Ohio cases depend upon the statute, and even they allow the money to remain in court when a new trial is

allowed. In *Meily v. Zurmehly*, 23 Ohio St. 631, it appears *no new trial was granted*, or the money would have remained in court, and possession would have been authorized but for the fact that the law of 1872 had expressly repealed the law of 1852, which had been in force for twenty years, and which had authorized possession, pending proceedings in error, and *while money was in court*. In *Wagner v. New York, etc., R. R. Co.*, 38 Ohio St. 32, it was merely decided that the statute did not authorize payment before judgment—and there was no judgment. Yet in that case, even if the money were the land owner's, the court held either party might prosecute error and reverse the judgment. It moreover is based on the last preceding case, which we have just seen rests in the new statute. (4) If the payment into court, pending exceptions, did not in other cases entitle the defendant to the fund, the right to it was not acquired by the subsequent occupation of the premises by the railway company. Such occupation was neither by order of court, by agreement, nor was it waiver. It was authorized by statute, pending exceptions and for further proceedings. R. S., 1879, sec. 896; *Peterson v. Ferreby*, 30 Iowa 337. It is a gross misconstruction of the railway company's acts and statements in court that it had taken possession, by virtue of these proceedings, before and without any order of court in relation thereto, to hold this was a waiver of exceptions, and the same in legal effect as payment by a defendant of a money judgment duly rendered against him. (5) The court had no authority to strike out the exceptions because of any act of the railway company, and it had a right to allow a supersedeas on final decision, not only under the general law, but in the present proceeding especially. R. S., 1879, secs. 896, 3718. (6) [a] Eminent domain or the power of the sovereign to condemn private property for public use is an inherent power in the state to be exercised as the legislative department of government deems best, subject only to constitutional restrictions. The prin-

ciple which provides that private property shall not be taken for public use without compensation was one which existed at common law. It has been embodied in the constitution of every state in the union in some form; but without this incorporation into the constitution the right of the property holder to compensation would be secure and inviolable. Under the general principles of law applicable to the proceedings to condemn land, the appeal vacates and supersedes the finding or report of the commissioners, and the finding being vacated, the amount of damages is not fixed, and cannot be until the final determination of the appeal; hence, until that time the property holder cannot receive his compensation, as it has not been determined, and the occupation of his premises by the authority of the legislature is simply provisional, and is not in conflict with the provision of the bill of rights, which says that his property shall not be taken for public use without just compensation, and that after such compensation is ascertained, the property shall not be damaged, or the proprietary rights of the owner therein divested, until the same is paid to him. The occupation, disturbance and damage prohibited by the constitution until payment is first made, is such as the land owner sustains by the proceedings, resulting in finally appropriating his property to public use, and not the damage which he may sustain in consequence of a provisional occupation, authorized by the statute, pending the final determination and ascertainment of the damages which he will sustain by the appropriation of his land for the purpose for which it is sought to be taken. The words "payment into court," mean for *security*. *Blackshire v. Railroad*, 13 Kansas, 514; *Railway Co. v. Railroad Co.*, 28 Kansas, 454; *Railroad v. Callahan*, 13 Kansas, 494; *Tracy v. Railroad*, 80 Ky. 259; *Jackson v. Winn*, 4 Littell, 323; *Gashweller v. McIlvoy*, 1 A. K. Marshall, 61. (*b*) If the statute is void, all acts under it are void, and the owner cannot possibly acquire a right to

the money because of the deposit intended and directed for an entirely different purpose. (7) [a] If any part of article six of chapter twenty-one, Revised Statutes, is void, because in conflict with the constitution, the entire statute is null and void. This court has held it is to be considered as a whole. 49 Mo. 455; 57 Mo. 491. (b) If all the provisions are so dependent upon each other, and operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other, the whole statute is unconstitutional. Cooley on Constitutional Limitations, 178, 179; *Commonwealth v. Hitchings*, 5 Gray, 485; *Warren et al. v. Mayor*, etc., 2 Gray, 84. (c) While it is undoubtedly true that a statute may be constitutional in part, and unconstitutional in part, yet as a general proposition it has its limitations. *Railroad Co. v. Railway Co.*, 28 Kansas, 458. (d) If the parts of the statute are so mutually dependent upon each other as to warrant the belief that the legislature intended them as a whole and that all should be carried into effect, then if some parts are unconstitutional, all parts which are thus dependent or connected must fall. Cooley on Constitutional Limitations, 179; *Warren et al. v. Mayor*, etc., 2 Gray, 84; *Stauson v. City of Racine*, 13 Wis. 398; *Campan v. Detroit*, 14 Mich. 272; *State v. New Brunswick*, 9 Vroom, 320; *State v. Hudson Co.*, 8 Vroom, 12; *State v. Emcion*, 33 La. Ann. 253; *Mesheimer v. State*, 13 Ind. 486; *Washington v. State*, 8 Eng. (Ark.) 163; *Eason v. State*, 6 Eng. (Ark.) 481; *Lathrop v. Mills*, 19 Cal. 529; *People ex rel. v. Copper et al.*, 83 Ill. 595; *Hinze et al. v. People ex rel.*, 92 Ill. 424; *State v. Commissioners*, 5 Ohio St. 497; *State v. Milwaukee*, 25 Wis. 339; *Reed v. Railroad*, 33 Cal. 212.

*Dyer, Lee & Ellis* for defendants in error.

(1) Where the sole controversy is as to the right of

appeal or writ of error it may be raised in the appellate court by motion to dismiss. Where the record discloses no right to appeal, or writ of error, the exercise of the right may be challenged by motion to dismiss. A party cannot appeal from a judgment after having accepted the fruits of it. *Robards v. Lamb*, 76 Mo. 192; *Cassell v. Fagin*, 11 Mo. 207; *Chase v. Williams*, 74 Mo. 429, 477; *Kinealy v. Macklin*, 67 Mo. 95. It is because the payment or acceptance or other act is voluntary, that its effect cannot afterwards be disputed by appeal. Thus, where one takes a voluntary non-suit, no appeal or writ of error will lie. *Plank Road Co. v. Mitchell*, 20 Mo. 432. A party cannot come into court and confess judgment in favor of another and then appeal from it. So a party cannot appeal from a judgment in his own favor. 67 Mo. 97; 3 Bacon's Abr. Er. (K.) 4, p. 373, Bouv.'s Ed.; 5 Co. 39 B., Moore, 74. Voluntary payment of judgment is waiver of right of appeal. *Radway v. Graham*, 4 Abb. Pr. 468. The judgment has a double aspect, being for the land, in favor of the railroad company, and for the money in favor of the land owner. Neither party can accept that part in his own favor, and at the same time controvert the part adverse to him by appeal. *Bennett v. Van Syckel*, 18 N. Y. 481; *Vail v. Remsen*, 7 Paige, ch. 206. These cases hold that under such circumstances the appeal will, on motion, be dismissed, and that motion is the only proper remedy in such cases. This rule is peculiarly applicable to condemnation proceedings. *Railroad Co. v. Johnson*, 84 Ind. 420; *Railroad Co. v. Byington*, 14 Iowa, 571; *Borgalthaus v. Ins. Co.*, 36 Iowa, 250. The rule must be reciprocal. As one by accepting payment acquiesces in the judgment, so by voluntarily paying the judgment a like result must follow. *Ind. Dist. of Altoona v. Dist. Tp. of Del.*, 44 Iowa. Where the owner accepts the amount assessed he cannot afterwards controvert the right of the plaintiff, "nor is it material in such case that the judgment may have been erroneous and void." *Test v. Larsh*, 76 Ind.

452, 460. (2) Section twenty-one of the Bill of Rights, in the Missouri constitution, where it says, "paid to the owner, or into court for the owner," does not mean secured to the owner. It has been held that nothing could be *compensation* short of actual payment. Cooley's Const. Lim. (4 Ed.) 702 ; *Chambers v. Railroad*, Sup. Ct. of Ga., 1883 ; 10 Am. & Eng. Railroad Cases, 376. Others conceded that the language might be satisfied by legislation ; either securing the payment, or permitting payment subsequent to occupation and final ascertainment of damages. *Bonaparte v. Railroad Co.*, Baldwin C. C. 226 ; *Walther v. Warner*, 25 Mo. 277. The wants and necessities of the people influence and control courts in administering the law. If there be language of doubtful import, courts must look to the circumstances and condition of the people to find the meaning of the clause in question. *Judges v. St. Louis Co. Ct.*, 15 Mo. 23. At the date of the framing of our constitution in 1875, the provisions of constitutions of other states with reference to condemnation proceedings must have been read by its members. The legislature of New Jersey enacted that in case any company should appeal from the finding of the commissioners appointed to appraise and assess, then the company might deposit the amount of damages in court, and forthwith enter on the lands condemned. This was held unconstitutional and void. *Redman v. Railroad Co.*, 33 N. J. Eq. 165 ; *Pearson v. Johnson*, 54 Miss. 259 ; *Chambers v. Railroad Co.*, 10 Am. & Eng. Ry. Cases, 376; *Norristown Tpk. Co. v. Burket*, 26 Ind. 53, 57 ; *Graham v. Railroad Co.*, 27 Ind. 260 ; *Sidener v. Norristown Tpk. Co.*, 23 Ind. 623 ; *Railroad Co. v. Grady*, 6 Ky. 144. Compensation is payment for a compulsory purchase. Cooley Const. Lim. (4 Ed.) 699. The words "pay into court for the owner" mean the legal and beneficial equivalent of actual payment to the owner. *Blanchard v. City of Kansas*, 16 Fed. Rep. 444 ; Mills on Eminent Domain, sec. 76. Courts should require the full performance of all conditions to the exercise of the

right of eminent domain. 2 Dillon on Mun. Corp.
(2 Ed.) 469 ; *Evans v. Railroad Co.*, 64 Mo. 463. The
land should either be the owner's, or he should be paid
for it. Cooley's Const. Lim. (4 Ed.) 704. (3) The right of
the company to appeal and *supersedeas* in this case is
not given by the constitution ; the right of the land
owner to the money is. The constitution is the higher
law, and must be obeyed. Its terms are self-enforcing,
and need no legislation. *Fusz v. Spaunhorst*, 67 Mo.
256. Revised Statutes, section 896, under which the
railroad company claims the right to proceed to construct
its road, pending exceptions to the report, was enacted
before the adoption of the present constitution. The
right of possession may be taken away, and the statute
still be operative in behalf of the land owner. "An in-
tent to repeal will not be assumed, if any other construc-
tion can be given to the subsequent act." *State v. Draper*,
47 Mo. 29. But this rule loses some force when the sub-
sequent act professes to be, to some extent, one of repeal,
as does section one of the schedule of our constitution.
The object in view is not to reconcile the constitution
with the statute, but the statute with the constitution.
*Wagner v. Railroad Co.*, 10 Am. & Eng. R. R. Cases,
384 ; Bish. on Stat. Crimes (2 Ed.) sec. 152. (4) Where
the money is in the court as a payment, or as a security
for the land owner, he is, in either event, entitled to it ;
in the one case because it is his property, and in the other
because it is the only kind of security which the land
owner is required to accept. He cannot be compelled to
look to a *supersedeas* bond instead of the money. For
this reason the order of *supersedeas* should be vacated.
Even in those states where the constitution only re-
quires the money to be "paid or secured," this construc-
tion prevails. *Meily et al. v. Zurmehly*, 23 Ohio St.
627 ; *Wagner v. Railroad Co.*, 10 Am. & Eng. R. R.
Cases, 384 ; *Rudesill v. State ex rel. Bird*, 40 Ind. 485,
490.

*Klein & Fisse* and *Smith & Krauthoff* for The Missouri Fire Brick & Clay Company and Austin R. Moore, trustee.

(1) The *supersedeas* indorsed upon the writ of error in this cause is in contravention of the constitutional rights of the defendants in error.. Const. of Mo. 1875, art. 2, sec. 21. Payment is required to be made, not a mere deposit by way of security. The money, when paid, becomes *eo instanti* the property of the land owner, being the equivalent or compensation for his land. A *supersedeas* cannot be lawfully granted to prevent the owner from receiving his own. The railroad company, having paid the money, has parted with all right to it and is not in position to litigate over the ownership of it. (2) The writ of error sued out in this cause should be dismissed. (*a*) Under our form of procedure, the office of the writ of error is not different from that of an appeal. The appeal is granted upon an affidavit that the appellant is aggrieved. R. S., sec. 3710. The writ of error is a writ of right under the statute. R. S., sec. 3743. But "it is a general rule that no person can bring a writ of error to reverse a judgment, who was not party or privy to the record, or prejudiced by the judgment, and, therefore, to receive advantage from it." Tidd's Practice (3 Am. Ed.) *1135; 3 Bacon's Abr. (Bouvier's Ed. 1876), 330, Title Error, B. "The object of a writ of error being to redress an injury which the complainant has sustained by the error of the court it can be brought only by the party who has been aggrieved by the judgment." *Alling v. Shelton*, 16 Conn. 436; *Howse v. Judson*, 1 Fla. 133; *Townsend v. Davis*, 1 Ga. 495; *Tey's case*, 5 Rep. *38; *Medina v. Stoughton*, 1 Ld. Raym. 593; *William v. Gwyn*, 2 Saund. R. 42, *o*, case 4, at p. 46, *b. c. n.* (6); *Hughes v. Stickney*, 13 Wend. 280; *Kinnealy v. Maeklin*, 67 Mo. 95. (*b*) The plaintiff in error is not aggrieved by the order of the court of appeals dismissing

the appeal in this case. (c) Not only is the plaintiff in error not aggrieved, but it has voluntarily acquiesced in the award of the commissioners by paying the money into court for the defendants in error, and it has also taken and retains the full benefit of the proceedings, and can only justify its act in taking possession of and disturbing the land of the defendants in error, by virtue of the validity of all prior acts and proceedings in this cause. (d) It is a rule of universal application, founded on natural justice, that whenever a party has accepted and retains the benefit of a proceeding or transaction, whether in or out of court, he will not be permitted to assail that part thereof which is against him, or repudiate or endeavor to invalidate the same. (3) Thus, if a party causes execution to be issued on a judgment in his own favor, and voluntarily collects the judgment, this is held to be a release of all errors against him, and he is estopped to afterwards reverse the judgment or decree on error or appeal. *Cassell v. Fagin*, 11 Mo. 207; *Robards v. Lamb*, 76 Mo. 192, 194-5; *Fly v. Bailey*, 36 Tex. 119; *Knapp v. Brown*, 11 Abb. Pr. (N. s.) 118, 122; *Bennett v. Van Syckel*, 18 N. Y. 481; *Murphy's Heirs v. Murphy's Adm'r*, 45 Ala. 123; *Chapman v. Lee*, 51 Ala. 106; *Shinkler v. Martin*, 54 Ala. 354; *Ind. Dist. of Altoona v. Dist. Tp. of Delaware*, 44 Iowa, 201. (4) Or if he accepts the benefits of a decree, judgment or proceeding of any nature, which is made to depend on the performance of any act or thing by him, or upon conditions as to him, he cannot, while holding on to such benefits, controvert or seek to overthrow that part thereof which militates against him. *Austin v. Loring*, 63 Mo. 19, 23; *Chase v. Williams*, 74 Mo. 429, 437; *The Miss. & Mo. Ry. Co. v. Byington*, 12 Iowa, 57; *B., Q. & C. Ry. Co. v. Johnson*, 84 Ind. 420; *Tey's case*, 5 Rep. *p. [38] at p. *40; *Officer v. Price*, 5 Yerg. (Tenn.) 285; *Smith v. Jack*, 2 W. & S. 101; *Smith v. Worden*, 19 Pa. St. 424, p. 430; *Lacy v. Hall*, 37 Pa. St. 366; *Radway v. Graham*, 4 Abb. Pr. 468; *Bennett*

*v. Van Syckel*, 18 N. Y. 481; *Clarke v. Meigs*, 10 Bosw. 337; *Glackin v. Zeller*, 52 Barb. 147; *Marwin v. Marwin* [No. 1] Court of App., 11 Abb. Pr. (N. S.) 97. (5) So in this case, the plaintiff in error is in this position: It assumed the report of the commissioners to be valid and regular and made the payment into court, and took possession of the property. Unless the report of the commissioners was regular and valid as to the railroad company, it had no right to pay the money or to take possession. It seeks now to have that declared to be invalid on the validity of which all its rights in the premises depend. This court will not permit a party to take advantage of his own wrong in such a manner. The railroad company has invoked the statute, and cannot be permitted to plead that it is void. A party who has received the benefit of a statute, is precluded, by his action, from contesting its validity. Cooley's Const. Lim. (5 Ed) 181; *People v. Murrry*, 5 Hill, 468; *Wellington et al. Petitioners*, 16 Pick. 87, p. 96–7; *The People v. Brooklyn, F. & C. I. R. Co.*, 89 N. Y. 75, pp. 92, 94; *Matter of the Application of Cooper*, 93 N. Y. 507, pp. 511–12; and see Bigelow on Estoppel (3 Ed.) 571, 573.

SHERWOOD, J.—The case is this: On the eighth of June, 1883, the St. Louis and San Francisco Railway Company filed its petition to have certain lands, belonging to the Evans & Howard Fire Brick Company and the Missouri Fire Brick & Clay Company, condemned for the use of the railway company, under the statute in such case made and provided. The defendant, Austin R. Moore, was made a party merely as a trustee in a deed of trust made by the last named defendant to secure one of its debts. Summons was issued the same day, and duly served; and on July 6, three commissioners were appointed to assess the damages. On the twenty-second day of August, the commissioners filed two reports; *two* of the commissioners assessing the damages of the Evans & Howard Company at $50,000,

and the other commissioner assessing them at $4,000; and two also assessing the damages of the Missouri Fire, etc., Company at $25,900, the third commissioner placing the amount at $12,000. On August 23, 1883, notice was given of the filing of the reports, which was served on the twenty-seventh, and on the thirtieth of August the railway company filed its exceptions to the reports of the commissioners, and on the same day paid to the clerk of the court the amount of the damages assessed to the several companies. The exceptions were in part based on the grounds that the award of the commissioners was largely in excess of any fair or just compensation for the damages which would be caused by the construction of plaintiff's road, and that the damages assessed were imaginary and speculative. On September 17, the parties appeared, and the railway company moved to have its exceptions to the report heard ; the defendants moved for payment to them of the amounts paid the clerk, and thereupon the motion of plaintiff for hearing of exceptions being submitted to the court, and the plaintiff then, in open court, admitting that since making the payments to the clerk of the court, and in virtue of such payments for the defendants, it had taken possession of the property of said defendants described in the petition and the report of commissioners herein, the court overruled said motion for hearing of plaintiff, and struck out the exceptions aforesaid.

The court sustained the motions of defendants and ordered the clerk to pay over to the defendant companies the several sums assessed and theretofore paid into the court. The railway company immediately filed its motions to set aside said orders of payment and the order striking out the exceptions, and for a re-hearing of said matters, and these motions were then and there overruled. Again, on the eighteenth of September, the railway company filed its motion for re-hearing as to awards, and this was overruled. To all of these several acts of the court, exceptions were duly preserved. Nothing

St. L. & S. F. Ry. Co. v. Evans & Howard Brick Co.

more having in the meantime appeared of record, on September 19, the bill of exceptions was filed, and the railway company filed its affidavit and application for appeal, and the appeal was allowed. Thereupon the railway company filed its several appeal bonds, one in the sum of $110,000 for the Evans & Howard Company, and one for the Missouri Company in the sum of $55,-000 ; these were approved by the court. Thereupon the defendants severally demanded the delivery of the several sums paid by the company into court. This demand was refused by the court, on the ground that the appeal bond operated as a stay of the payment of said money ; and the court, of its own motion, further directed, that pending the appeal, said sums of money should be retained by the clerk for investment or safe keeping, as the court might thereafter direct. This appeal was, under the law, returnable to the March term of the St. Louis court of appeals. On the first day of that term the defendants united in a motion to dismiss the plaintiff's appeal, and this motion was sustained by the court of appeals. The present writ of error was then sued out, and an order of *supersedeas* obtained, the plaintiff filing in this, the Supreme Court, its appeal bonds for the several defendants in respective sums, more than double the assessments, and with approved sureties.

This being the state of facts presented by this record the defendants have moved to vacate the order of *supersedeas* and to dismiss the writ of error. These motions will now be considered, and in considering them I deem it best to consider not only the action of the court of appeals in dismissing the plaintiff's appeal, in consequence of which this writ of error was sued out, but also to consider the merits of the controversy. Indeed, the merits of the controversy are so closely interwoven with the merits of these motions, that the discussion of the one involves to a considerable extent the discussion of the others.

Section 3710, Revised Statutes, 1879, provides that: "Every person aggrieved by any final judgment or decision of any circuit court in any civil cause, or by any such judgment or decision of the St. Louis court of appeals * * * may make his appeal to the court having appellate jurisdiction of such judgment or decision." This court has ruled in *State v. Lewis*, 76 Mo. 370, that under the provisions of that section and of section 3713, an appeal with a statutory bond would operate as a *supersedeas*, where the judgment appealed from awarded a peremptory *mandamus*, and that those statutory provisions, subject to the conditions contained in those sections, apply to *every civil cause*, no matter what the judgment may be, and that consequently proceedings by *mandamus* were included within those provisions. And writs of error, under section twelve of article six, of the constitution, are authorized to issue from this court to the St. Louis court of appeals—in all cases involving the construction of the constitution of this state, etc. Section fifteen of the same article provides that, "All laws relating to practice in the Supreme Court" shall apply to the St. Louis court of appeals, etc. And section 3743, Revised Statutes, 1879, declares that writs of error are writs of right, and shall issue, of course, out of the Supreme Court to the circuit court in vacation as well as in term, etc. And §§ 3756, 3757, 3758, 3759, make provisions whereby a writ of error may be sued out, and that a bond may be given under similar conditions and with similar effect as in ordinary cases of appeal. While section 3785, a new section, carries into effect the constitutional provision aforesaid by providing that the provisions of "the chapter regulating the practice in the Supeme Court, shall apply to practice in the St. Louis court of appeals. * * * And all cases taken to or from the St. Louis court of appeals by appeal or writ of error shall be governed by the provisions of this chapter, regulating the taking of cases by appeal or writ of error to the Supreme Court," etc. And the laws of 1883,

page 111, amending section 3126, Revised Statutes, 1879, when considered in connection with other statutory provisions already noticed, fully authorizes a judge of this court, when it has adjourned for more than one day, to inspect the record in a cause and to allow a writ of error to stay execution upon the usual terms. The order in this cause made by the circuit court was a final order, upon which an appeal or writ of error would lie.

Our reports furnish frequent instances where appeals have been taken in condemnation proceedings. *Railroad Co. v. Lackland*, 25 Mo. 527; *Hannibal Bridge Co. v. Shaubacher*, 49 Mo. 555; *Ring v. Miss. Bridge Co.*, 57 Mo. 496; *Railroad Co. v. Campbell*, 62 Mo. 585. The appeal was taken in the circuit court from the action of the court in striking out the plaintiff's exceptions, and the order of the court that the clerk pay over to the defendant companies the sums assessed and paid into court. At an early day in this state it was held a writ of error would lie to the action of the trial court upon a motion requiring a sheriff to pay over money in satisfaction of an execution. *Wise v. Darby*, 9 Mo. 132. To the same effect are *Slagel v. Murdock*, 65 Mo. 522, and cases cited. And the dismissal of the appeal of plaintiff by the court of appeals was, also, a final order or judgment from which an appeal will lie, or which will authorize a writ of error to issue. *Matter of N. Y. Cent. & H. River Railroad Co.*, 60 N. Y. 112; *Pearson v. Lovejoy*, 53 Barb. 407; *Hammond v. Carpenter*, 29 How. Pr. 43. And it is apparent from an inspection of the records and of these motions, and of the action and opinions of the court of appeals, both in the present case and the *mandamus* case, which has been argued in connection with this one, that the questions at issue do involve a construction of the constitution of this state, and, therefore, this cause, aside from other considerations, falls within our appellate jurisdiction. But it is strenuously urged, in support of the motion to dismiss the writ of error, that such writ can only be brought by

one who has been "*aggrieved*" by the judgment.   Just
this position was taken by the court of appeals when it
dismissed the appeal of plaintiff, citing in support of its
ruling *Kinealy v. Macklin*, 67 Mo. 95.

It is doubtless true that a party, under the terms of
the statute, is not entitled to an appeal unless ."*ag-
grieved*" by the judgment (R. S., 1879, sec. 3710), *i. e.*,
that a party cannot appeal from a judgment altogether
in his own favor, and the same rule holds as to suing
out writs of error.   This was *Kinealy's case;* he
obtained judgment of reversal in general term and then
appealed therefrom, not because there was any error .
committed against him, but because general term did
not go further and enter an affirmative judgment in his
favor.   Here, however, the very point in dispute is
whether the plaintiff is aggrieved or not; whether a
judgment can be truly said to be *in favor* of a party
against whom it goes, compelling it to pay, if the
minority report be correct, $50,000 to one of these de-
fendants, where in common fairness and common honesty
but $4,000 should be paid.   Such a wide difference in
valuations, would seem to argue either gross ignorance,
or else gross partiality, and there seems no escape from
one or the other of such distasteful conclusions.   On a
former occasion where commissioners, appointed to ap-
praise property for railroad purposes, had disregarded
their duties, and had assessed the damages in favor of
the land owner at an excessively large sum, this court
pointedly rebuked the commissioners for dereliction of
duty and reversed the judgment.   *Railroad Co. v. Camp-
bell*, 62 Mo. 585.   So that, on this portion of the cause,
the plaintiff may, with much force of reason, say that it
is not greatly benefited or favored by the action of the
trial court, which refused to hear its exceptions, and yet
ordered the money to be paid over to the defendants;
money which was paid into the hands of the clerk under
the very terms of the statute, and on the faith that those
exceptions would be heard before any other step would

be taken. Surely these circumstances attendant on the payment of the money to the clerk, give not the faintest token of acquiescence in the award of the commissioners. Construed as a *whole*, as all such transactions should be, they amount in their sum total but to this : that the railroad company was willing to take the land and to pay for it; to enter upon the land and to construct its road, reserving to itself, as under the statute it might lawfully do, the right to have tested and examined by the court, the question whether the full compensation, already beyond the control of the company, already in the hands of the court, already in *custodia legis*, was not more than "*just compensation*," for the land. Such acts on the part of the railroad company have about them no more of the similitude of waiver or acquiescence than similar acts on the part of the *land owner* in *Evans'* *case*, 64 Mo. 453, where he exhausted his statutory remedies in resisting the taking of his land for less than it was worth, and finally enjoined the railroad company until that it should pay him the damages allowed on the second assessment. Further comment on this branch of this case is unnecessary, and the motion to dismiss the writ should be denied.

I pass now to the consideration of the motion to vacate the order of *supersedeas*. It would seem necessarily to follow that if the writ of error was not improvidently issued, that the *supersedeas* indorsed thereon was but an incident to that "writ of right." And viewing the matter in this light, I might well pause here and refrain from discussing those matters which touch the heart of this cause; but inasmuch as under the ruling just announced the judgment should be reversed, because of the unwarranted action of the court of appeals in dismissing the appeal of plaintiff; and as those matters will have to be determined on the return of this cause, I deem it not improper to discuss them. Now, as to the order of *supersedeas* which defendants have moved to vacate: It is said that order is in contraven-

tion of the constitutional rights of the defendants, and this declaration comprehends also the action of the circuit court in accepting a bond when granting an appeal. Let us examine this point: Section twenty-one of article two, of the constitution provides : "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, *in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested.*"

An eminent jurist and author speaking in regard to constitutional construction has said : "Every word employed in the constitution is to be expounded in its plain, obvious and common-sense meaning, unless the context furnishes some ground to control, qualify or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of life, adapted to common wants, designed for common use and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them with the help of common sense and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." 1 Story Const., sec. 451.

Taking this statement as one of the *criteria* of what is proper in constitutional investigations, let us consider the section of the constitution just quoted. In the first place, it would be doing violence to all known rules of interpretation to assume that those who framed and those who by their votes adopted our constitution, were actuated by no intelligent purpose in that behalf. On the contrary, it must be assumed that they were familiar

with the vicissitudes incident to condemnation proceedings and with the statutory provisions relating thereto; familiar with the fact that sometimes the land desired to be taken is not appraised at a sufficiently large sum, and, therefore, the land-owner files his exceptions; familiar with the fact that sometimes such land is appraised and the damages of the owner assessed at an exorbitantly large sum, and, therefore, the corportion, desiring to appropriate the land, files its exceptions; familiar with the fact that contests arise on the hearing and trial of these exceptions, and that frequently appeals are taken by the unsuccessful party to the court of last resort, to the end that the litigated matter may be finally adjudicated; familiar with the fact that such appeals cause delay; familiar with the fact that it concerns the public welfare that the enterprise of railroad building should not be retarded, and cannot be retarded without injuriously affecting the interests and prosperity of large communities in this state; familiar with the fact that in order to determine what the land proposed to be taken is worth, and how much the owner of it will be damaged by the taking, an imperious necessity exists that the *precise strip of land* required, its dimensions, etc., should first be ascertained, and that such strip should be marked out and sufficiently designated in order that those appointed to appraise it and assess the damages accruing to the land owner, can intelligently perform their work after they shall have " viewed the property." Taking all these things into consideration, as must be presumed to have been done by the framers and adopters of our constitution, it does not seem difficult to reach a correct conclusion as to the meaning of the words employed. If the words, "paid to the owner, or into *court for the owner*," be taken in a *literal* sense, it cannot be doubted that the plaintiff company has brought itself within the very terms and letter of the organic law; the money has been "*paid * * * into court for the owner.*" But grant that the words are not to be taken

literally, and the result is not changed, if they are to be taken in their "usual and most known signification" (1 Sto. Const., sec. 400), taken in the light of an intelligent purpose prompting those who used and those who adopted them. Viewed in this light, it is easy to discern the object contemplated by those who employed them and the reason they were employed. The very fact that they were employed, in and of itself, discloses a knowledge, on the part of the framers of the constitution, of the frequent necessity, arising in the progress of condemnation proceedings, of paying money "*into court for the owner*," there to await the ultimate determination of the suit. If these words are held to have this meaning, such meaning will not be a strained or forced one, but a meaning which, considering the surroundings of those who framed the organic law, and were doubtless aware of the law as it stood and of the force and effect of the words used, will be most obvious and natural.

It has been suggested, however, that "the clause permitting payment into court for the owner, was evidently intended as a provision for cases where the owner might refuse payment when tendered, or might be unknown or not *sui juris*." This view, so far as it goes, is in entire accord with the one already expressed; for the language is broad enough to cover every possible contingency which necessitates the payment of money into court, or its retention to abide the result of litigation. But that language cannot be restricted to the cases of a recalcitrant, unknown or not *sui juris* land owner. To narrow the language thus, to limit its scope to those particular instances alone, would not be warranted, were the words taken either in their literal or their ordinary sense. The reason which would thus restrict them is by no means apparent; and if the constitution will permit a railroad or other corporation to make a payment into court for an obstinate or unknown owner, or one not *sui juris*, and thereupon to enter on the land and construct its road, it is difficult to see why the payment of the

money to the clerk in that case, attended, as it would be, with all the hazards of loss that it would in any other, from embezzlement or otherwise, is not as obnoxious to constitutional objections as though the payment were made as in the present case; made to await judicial action upon the exceptions filed in the cause, in order to have a judicial determination whether the amount allowed by the commissioners does not exceed that "just compensation" which the constitution so emphatically guarantees. That guaranty only extends over and only includes "just compensation" and no more, and was never intended to countenance arbitrary assessments or exorbitant exactions. To rule otherwise, to hold that the framers of the constitution were less solicitous of the rights of the money owner than they were of the land owner, is to impugn either their wisdom or their justice. It will have been observed, from the discussion heretofore had, that intimation has already been given as to the meaning of the words, "*the property shall not be disturbed*," etc. It must be quite obvious that these words are not to be taken in a *literal* sense, at least so far as concerns preliminary steps looking to the condemnation of property, because if such rigidity of meaning be attributed to them, it would be out of the power of a railroad, or municipal corporation, to take the necessary initiatory steps to ascertain *what* land would be required for the purpose in view. To this point of the investigation, therefore, the familiar maxim applies: "*Lex non intendit aliquid impossibile.*" The reason of the law in such cases should prevail over its letter, and general terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence, the presumption being indulged that the lawmakers intended exceptions to language which otherwise would lead to such anomalous results. *United States v. Kirby*, 7 Wall. 482; *People v. McRoberts*, 62 Ill. 38; *Fusz v. Spaunhorst*, 67 Mo. 256.

This point, however, has become measurably unim-

portant, owing to the subsequent shape the proceedings instituted have assumed, but in any event, if the meaning I have ascribed to the words, *"paid  *  *  *  into court for the owner,"* be the correct one, the command of the constitution as to that point had been fully complied with prior to those things which gave origin to the appeal.  It will have been observed, also, that the section of the constitution under discussion, declares "such compensation shall be ascertained by a jury or a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."  Since the adoption of the constitution, the general law on the subject of condemnation of land, has undergone revision, but virtually remains, in all essential particulars, the same as before.  The sections of the statute referred to, material to be quoted, are as follows :

"Sec. 892.  In case lands or other property are sought to be appropriated by any road, railroad  *  *  * or other corporation created under the laws of this state, for public use, and such corporation and the owners cannot agree upon the proper compensation to be paid  *  *  *  such corporation may apply to the circuit court of the county where said land or any part thereof lies, or the judge thereof in vacation, by petition, setting forth the general directions in which it is desired to construct their  *  *  *  railroad  *  *  *  over such lands, a description of the real estate or other property which the company seeks to acquire, the names of the owners thereof, if known,  *  *  *  and praying the appointment of three disinterested freeholders as commissioners, or by a jury, to assess the damages which such owners may severally sustain in consequence of the establishment, erection and maintenance of such  *  *  * railroad  *  *  *  over such lands  *  *  *"

Section 893 provides how summons shall be issued and served.

"Sec. 894.  The court, or judge thereof in vacation, on being satisfied that due notice of the pendency of the

petition has been given, shall appoint three disinterested commissioners, who shall be freeholders, * * * to assess the damages which the owners may severally sustain by reason of such appropriation, who, after having viewed the property, shall forthwith return, under oath, such assessment of damages to the clerk of such court, setting forth the amount of damages ; and should more than one owner be included in the petition, then the damages allowed each shall be stated separately, together with a specific description of the property for which such damages are assessed, and the clerk shall file said report and record the same in the order book of the court ; and thereupon such company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed ; and on making such payment it shall be lawful for such company to hold the interest in the property so appropriated for the uses aforesaid ; and, upon failure to pay the assessment aforesaid, the court may, upon motion and notice by the party entitled to such damages, enforce the payment of the same by execution, unless the said company shall, within ten days from the return of such assessment, elect to abandon the proposed appropriation of any parcel of land by an instrument in writing to that effect, to be filed with the clerk of said court and entered on the minutes of the court, and as to so much as is thus abandoned, the assessment of damages shall be void."

"Sec. 896. Upon the filing of such report of said commissioners, the clerk of the court wherein the same is filed shall duly notify the party whose property is affected, of the filing thereof ; and the report of said commissioners may be reviewed by the court in which the proceedings are had, on written exceptions, filed by either party in the clerk's office, within ten days after the service of the notice aforesaid ; and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown. Such new appraisement shall, at the request of

either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages; but, notwithstanding such exceptions such company may proceed to  *  *  *  construct said road or railroad; and any subsequent proceedings shall only affect the amount of compensation to be allowed.    In all cases, arising under the provisions of this article, the report of commissioners, when signed by a majority of them, shall be taken and considered as the report of all.''

. As the legislature has revised the general law in regard to condemnation of land, it will be presumed that their attention was directed to the subject of the necessity of conforming that law to the constitutional provisions, and such revision must be regarded as a legislative construction of that section of the constitution under consideration, and that the general law is in conformity thereto. ' *Groves v. Slaughter*, 15 Pet. 449 ; *Fusz v. Spaunhorst, supra*.   This legislative exposition is entitled to some weight, as the authorities show, and the courts may with some confidence repose upon the conclusions reached by the legislature (Cooley on Const. Lim. 219), and the statute, is to be viewed *pro hac vice*, in the same light as though the legislature had enacted a new statute in compliance with constitutional requirements, and had prescribed by law the manner in which the compensation for land taken shall be ascertained—by three freeholders, acting in the capacity of a jury or as commissioners.    *Prima facie* this law is constitutional; *prima facie* it conforms in all essential particulars to the organic law, and the well known rule of construction applies here, that a statute is not to be presumed repugnant to the constitution, until such repugnancy is made to appear beyond a reasonable doubt.    Vague conjecture and slight implication will not meet the requirements of this rule, and ''as a conflict between the statute and the constitution is not to be implied, it would seem to follow where the meaning of the constitution is clear, *that the court if possible must give the statute such a construc-*

*tion as will enable it to have effect.*"   Cooley's Const.
Lim. 218, 219, 220.   .

After a very careful examination of the section of
the constitution before quoted and a comparison of it
with the statutory provisions already set forth, I have
been unable to discover any necessary incongruity or re-
pugnancy between the constitution and the statute.  The
statute must, therefore, on the grounds stated, be held
*prima facie* valid, and that the manner which it pre-
scribes for ascertaining the compensation to be awarded
to a land owner as possessed of equal validity.   The
*manner* in which the jury or commissioners shall ascer-
tain the *quantum* of compensation is left entirely to the
legislature; that manner or method prescribed may well
include all the necessary details of motions and excep-
tions to the insufficiency or the exorbitancy of the amount
of damages assessed, and the appointment of new com-
missioners or another jury " as right and justice may re-
quire."   There is certainly nothing  repugnant to the
constitution in prescribing such details ; on the contrary,
it is in furtherance of the constitutional mandate requir-
ing that "just compensation" be made.   This embraces
all means necessary to that end, not inconsistent with
the constitution.   Nor is any incongruity apparent be-
tween the different sections of the statute.   In *Ring v.
Mississippi Bridge Company*, 57 Mo. 496, it was ruled
that section 3, which now corresponds with section 894,
and section 4, which now substantially corresponds with
section 896, should be *construed together*, and that the
corporation, having paid the money to the clerk for the
owner, might still except; but notwithstanding such ex-
ceptions, having made full compensation, as aforesaid,
might still proceed with the construction of the road and
the subsequent proceedings would only affect the amount
of compensation to be allowed.   It is, perhaps, unneces-
sary to say, at present, what force and effect are to be
given to the last clause of section 894, *supra*, in relation
to issuing execution against the corporation for the dam-

ages assessed.    It seems to be an independent clause, a cumulative remedy, and the owner is not called upon to rely on it for his compensation; that is secured to him in another way.

The clause rather seems intended as a spur to the diligence of the company, compelling an election in writing within ten days after the return of the assessment, whether the proposed appropriation of the land shall be abandoned, and in default of such written election within the designated time, that then execution shall issue for the amount assessed.    Sometimes a statute is unconstitutional in part and constitutional as to the residue, and if the unconstitutional part is not inseparably connected in substance with that which is valid and complete in itself, and capable of being executed in conformity with the apparent legislative intent, regardless of that which is rejected, the unconstitutional part may be regarded as stricken out.    Cooley's Const. Lim. 211, 212.    As this clause is apparently an independent one, not necessary to the complete enforcement of the other provisions of the statute, it is not thought that it affects the validity of the other provisions.    But granting that the *whole* statute on the subject under consideration is constitutionally invalid, what then?    Are the rights of the plaintiff to be sacrificed on the altar of *mistake?*  Is it to suffer because it has in all confidence relied on the validity of a statute, with whose terms and provisions it has made literal and exact compliance?    I hold not.    To hold differently would be to make the statute, itself, a *pitfall and a snare.*    It seems to have been thought that the plaintiff having paid its money into court for the owner, having filed its exceptions to the exorbitancy of the damages assessed against it, and then taken possession of the land in compliance with the statute, under the belief that its exceptions would be heard, and that the court, doing what right and justice would require, would so reduce the unwarranted amount assessed that it would fall within the limits of "just

compensation" is in some way *estopped* from asserting its rights, as expounded in the statute and in the constitution. It is sufficient to say that if the statute be invalid "the doctrine of estoppel is totally inadmissible in the case." *South Ottawa v. Perkins*, 94 U. S. 260; *State v. Railroad*, 31 Ark. 701. If, on the other hand, the statute is valid, it is so because it conforms to the constitution. So that in either case the rights of the plaintiff will not be jeoparded.

The statute authorizes "*either party*" to file exceptions, and the plaintiff company had the unquestionable right to rely upon that statute as valid so far as taking any steps which the statute authorized. And all the steps taken by it are to be viewed as a *whole* and not by *piecemeal;* the payment of the money and the taking possession of the land are to be considered in connection with the exceptions then on file. *Ring v. Bridge Company*, *supra*. The act of the plaintiff company cannot be severed in this way, made valid in part and void in part; void in so far as it works in its favor, and valid in so far as it works against it.

I have deemed it unnecessary to quote from or notice in this opinion, the great array of authorities cited by counsel. Many of them, owing to different constitutional and statutory provisions, and the different circumstances under which the various cases arose, have but little, if any, bearing upon the case at bar. I will, however, notice a few of them. The case of *Meily v. Zurmehly*, 23 Ohio St. 627, only turns upon the breach of the bond of the probate judge, by the retention of the money in his hands paid to him as the result of certain condemnation proceedings. Under the old law he would have had the right to have retained the money pending the appeal—but under the new law of 1872, he had no such right unless a new trial were granted, and there was none granted, and for this reason alone, his retention of the money was unwarranted, and constituted a breach of the conditions of his bond. But no question

was made in that case as to the validity of the old stat-
ute which allowed the corporation to pay into court the
amount of the judgment and then to enter upon and ap-
propriate the property, notwithstanding the pendency of
proceedings in error. And the constitution of Ohio, on
this point, is a literal copy of that of Kansas, with the
exception of the word "first" occurring just before the
word "secured." The case of *Wagner v. Railway
Company*, 38 Ohio 32, is no more in point; the question
there being, as Johnson, J., states, whether property con-
demned could be appropriated by paying the amount
into court required by the verdict, unless a *judgment*
were rendered on that verdict, and it was ruled a judg-
ment was necessary; and, besides, the statute in that in-
stance gave no right to appropriate the property pending
the second trial. The case of *Redman v. Philadelphia
Railroad Company*, 33 N. J. Eq. 165, was one where
the constitution in express terms declared that "individ-
uals, or private corporations, shall not be authorized to
take private property for public use without just com-
pensation *first made to the owner*." And it was very
properly held that a statute which authorized a pay-
ment of money "*into court*," was not in harmony with
the constitution. But in Iowa, where the constitution
provides that "private property shall not be taken for
public use without just compensation first being made or
secured to be made, to the owner thereof, as soon as the
damages shall be assessed by a jury," under a statutory
provision similar to our own as to taking possession of
the land and constructing the road upon payment "to
said sheriff for the use of said owner," and under which
provision either party had the right to appeal from the
assessment, it was ruled the statute was constitutional,
Day, J., remarking: "The property is not taken, in
an absolute sense, until the amount assessed upon ap-
peal is paid. If the appellate jury, in this case, shall
assess less than the sheriff's jury have assessed, the
amount is secured to the plaintiff, being in the sheriff's

hands ; if they shall assess more, the plaintiff can, by injunction, prevent the absolute appropriation of his property, until the increased sum be paid. *Richard v. Des Moines, etc., Railroad Company*, 18 Iowa, 260. In either event, the land owner is fully protected. We are clearly of the opinion that the money paid the sheriff should remain a deposit in his hands, until the damages are finally assessed in the appellate court." *Peterson v. Ferreby*, 30 Iowa, 327.

So, also, in Kansas, the constitution provides : "No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money or secured by a deposit of money, to the owner." The statute there is substantially like our own as to taking possession of the land by the corporation and constructing its road, notwithstanding the amount assessed as damages is in litigation, and Brewer, J., in an elaborate opinion, speaking for the court, reviewed all the prior cases in that state, and held the statute valid, remarking, in conclusion : "We have given this question the fullest consideration, and our conclusion upholds the validity of this statute. We think the constitutional guaranty has been satisfied by it, both in letter and in spirit ; that the rights of the land owner are protected, and at the same time no unreasonable obstruction placed in the way of railroad enterprises." *C. B. U. P. Ry. Co. v. A., T. & S. F. Ry. Co.*, 28 Kansas, 453.

It only remains to say that for the foregoing reasons the judgment should be reversed and the cause remanded in order to be proceeded with in conformity with this opinion. All concur, except Norton, J., absent.